United States Court of Appeals,

Eleventh Circuit.

No. 94-6908.

Robert L. BROWN, and all those similarly situated, Plaintiff-
Appellant,

v.

The ENSTAR GROUP, INC., Richard J. Grassgreen, Perry Mendel,
Defendants-Appellees.

May 31, 1996.

Appeal from the United States District Court for the Middle
District of Alabama. (No. CV 90-A-1268-N), W. Harold Albritton,
III, Judge.

Before TJOFLAT, Chief Judge, and CARNES, Circuit Judge.[*]

TJOFLAT, Chief Judge:

This appeal presents the issue of what must be proven to
establish "controlling person" liability under section 20(a) of the
Securities Exchange Act of 1934 (the "Act"), ch. 404, 48 Stat. 881,
899, 15 U.S.C. § 78t(a) (1994).  We adopt the district court's
test, and affirm its grant of summary judgment in favor of
appellee.

I.

In the late 1960s, appellee Perry Mendel founded what became
Kinder-Care, Inc. ("KCI"), a publicly held corporation.  He served
as president of the child-care company until 1985, when he became
chairman of the board of directors.  In 1987, KCI established
Kinder-Care Learning Centers, Inc. ("KCLC") as a wholly owned
subsidiary and Mendel undertook the responsibilities of chairman of

[*]Senior Circuit Judge Frank M. Johnson heard argument in
this case but did not participate in this decision.  This
decision is rendered by quorum.  28 U.S.C. § 46(d).

KCLC's board of directors in addition to his responsibilities as chair of KCI's board. Not long after KCLC was formed, the management of KCI began to plan a spin-off of the subsidiary, and in 1988, KCI caused KCLC to conduct a public offering of its common stock, reducing KCI's holdings to 87 percent of KCLC's common stock. On May 29, 1989, KCI announced plans for a corporate restructuring which would completely separate KCLC from KCI.

Part of this restructuring called for separate boards of directors for the two companies; to that end, Mendel resigned as chairman of KCI's board effective May 29, 1989. He remained chairman of KCLC's board, however. The uncontroverted evidence is that Mendel had very little contact with KCI's board after his resignation, and retained only a 2.6 percent interest in KCI. Richard Grassgreen, who had been president of KCI since 1985, became KCI's chairman, and continued to plan for the spin-off of KCLC.

Problems with the proposed restructuring developed, and in September of 1989, KCI's board met to discuss alternative plans. Mendel was invited to and did attend this meeting, but no new plan was adopted. At a subsequent meeting, which Mendel did not attend, KCI's board adopted a new plan, which it announced on September 22, 1989. The new plan called for the issuance to KCI shareholders of rights to purchase KCI's shares of KCLC stock.

In connection with the new restructuring plan, KCI issued a Prospectus to its shareholders on October 4, 1989. The Prospectus was prepared primarily by KCI's attorney. There is no evidence that Mendel personally participated in the preparation of the

Prospectus. On October 5, Mendel sent a letter to KCLC's shareholders, advising them of the restructuring and enclosing a copy of the Prospectus for their information. In the letter, Mendel stated that the Prospectus had been "jointly prepared" by KCI and KCLC. Shortly after the restructuring was completed, KCI changed its name to The Enstar Group, Inc. ("Enstar").

Appellants are shareholders of KCI/Enstar who bought KCLC stock from KCI as part of the restructuring.[1] They brought a three-count complaint against Enstar, Grassgreen, and Mendel,[2] alleging material omissions and fraud in the dissemination of the Prospectus. Enstar and Grassgreen subsequently filed for bankruptcy, and appellants dismissed all claims against those defendants, proceeding against Mendel alone.

Count one of appellants' complaint alleged that, in failing to disclose material facts in the Prospectus, Mendel violated section 10(b) of the Act, 48 Stat. at 891, 15 U.S.C. § 78j(b) (1994), and rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (1995), which together provide an implied private right of action for misrepresentations in the purchase or sale of securities. In addition, appellants alleged that Mendel was secondarily liable for any violations of the Act by KCI because he was a "controlling person" of KCI within the meaning of section 20(a) of the Act.

[1]The district court certified a plaintiff class with respect to appellants' federal securities law claims (count one). The court denied appellants' motion to certify a class with respect to appellants' state law claims (count three).

[2]Appellants' original complaint referred to Mendel as the chairman of the board of KCI. The district court allowed them to amend their complaint to remedy this error. We refer to the amended complaint as the "complaint."

That count further contended that if Mendel was not liable as a controlling person under section 20(a), then he aided and abetted KCI in connection with the 10b-5 violation. Count two alleged a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1964 (1994); this count was dismissed by the district court and is not at issue here. Count three alleged that Mendel committed fraud in violation of Alabama law. No aider and abettor liability was asserted in this last count.

The district court granted summary judgment to Mendel, holding that "the facts cannot legally support a finding that Mendel was a "controlling person' of KCI" at the time of the issuance of the Prospectus. *Brown v. Mendel,* 864 F.Supp. 1138, 1140 (M.D.Ala.1994). The court also found that Mendel was not personally involved in the alleged fraud, that he owed no duty to disclose any information to appellants in the Prospectus, and that therefore he could not be liable for fraud under Alabama law. *Id.* at 1147.

## II.

We review the district court's grant of summary judgment *de novo,* applying the same legal standards that bound the district court. *See Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1377 (11th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995). In making this determination, we view all evidence in the light most favorable to the non-moving party. *See Sammons v. Taylor,* 967 F.2d 1533, 1538 (11th Cir.1992). Summary judgment is appropriate in cases in which there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). For the reasons that

follow, we affirm the district court's grant of summary judgment in favor of Mendel.

With respect to the first count of their complaint, appellants effectively concede that Mendel is liable for violations of the Act only if he is a "controlling person" within the meaning the Act.[3] Section 20(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable....

15 U.S.C. § 78t(a). The regulations promulgated under the Act define control as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." 17 C.F.R. § 230.405 (1995). The burden is on the plaintiff to show that a defendant is a controlling person. The courts of appeals, however, do not agree on exactly how a plaintiff is to meet this burden.

The Eighth Circuit has developed what has become the most widely used test for determining whether a defendant is liable as

---

[3]Appellants also assert that, if Mendel is not liable for the 10b-5 violations as a "controlling person" of KCI, then he is liable as an aider and abettor. It is clear from the record, however, that appellants abandoned all aider and abettor claims well before trial. In their response to Mendel's interrogatories, appellants stated unequivocally, "Plaintiff[s] no longer contend[ ] that Mendel is liable as an "aider and abettor.' " Appellants maintained at oral argument that the aiding and abetting allegation was dropped only with respect to the 10b-5 claim. It was only with respect to the 10b-5 claim, however, that appellants raised aiding and abetting allegations. There was no mention in the complaint of aider or abettor liability with respect to the state law claims. We find that appellants abandoned any claim that defendant Mendel was an aider and abettor.

a controlling person. That court's two-prong test requires a plaintiff to establish that "the defendant ... actually participated in (*i.e., exercised* control over) the operations of the corporation in general ... [and] that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated." *Metge v. Baehler,* 762 F.2d 621, 631 (8th Cir.1985) (internal quotation marks and citation omitted), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). *Metge* 's test has been cited approvingly by a number of courts of appeals. *See, e.g., Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 887, 881 (7th Cir.1992), *cert. denied,* 509 U.S. 904, 113 S.Ct. 2994, 125 L.Ed.2d 688 (1993); *Abbott v. Equity Group, Inc.,* 2 F.3d 613, 619-20 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 486 (6th Cir.1992); *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *First Interstate Bank of Denver, N.A. v. Pring,* 969 F.2d 891, 898 (10th Cir.1992), *rev'd on other grounds sub nom. Central Bank v. First Interstate Bank,* --- U.S. ----, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

As the district court noted, our court has not formulated its own test for controlling person liability, nor have we adopted all or part of the Eighth Circuit's test. Two decisions of the former Fifth Circuit provide us with guidance in formulating a test, however.[4] In 1980, we found that a defendant who did not have the

---

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to

power to control the management of a company or the company itself could not be liable as a controlling person under section 20(a). *Pharo v. Smith,* 621 F.2d 656, 670 (5th Cir.1980). A year later, we found a defendant liable as a controlling person because the evidence established that he "had the requisite power to directly or indirectly control or influence corporate policy." *G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 958 (5th Cir.1981).

The district court devised a test that is a combination of the requirements outlined in *Pharo* and *Thompson.* We find the reasoning of the district court persuasive, and so adopt the test set forth in its dispositive order.[5] In this circuit, a defendant is liable as a controlling person under section 20(a) if he or she "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability."[6] *Brown v. Mendel,* 864 F.Supp. 1138,

---

October 1, 1981.

[5]We do not find footnote 7 of *Rosen v. Cascade Int'l, Inc.,* 21 F.3d 1520, 1525 n. 7 (11th Cir.1994), to be contrary to our holding in the instant case. The *Rosen* footnote is not only dictum, it is also contrary to *G.A. Thompson & Co.,* 636 F.2d at 958 ("Neither [the regulation] nor the statute appears to require participation in the wrongful transaction."), which is binding authority on this court. *See also Abbott v. Equity Group, Inc.,* 2 F.3d 613, 620 n. 18 (5th Cir.1993) (noting that *Thompson* rejected a "culpable participation" requirement).

[6]There is an important distinction between the test we adopt today and the Eighth Circuit's test discussed above. The Eighth Circuit's test requires a plaintiff to prove that a defendant actually exercised power over the entity primarily liable. Because we hold *infra* that Mendel neither possessed nor exercised power over KCI at the time the Prospectus was issued, we do not need to decide here whether "power to control the general affairs

1145 (M.D.Ala.1994). Of course, the plaintiff must also establish that the controlled person violated the securities laws.

There is no evidence in the record that Mendel had any power over KCI at the time of the issuance of the Prospectus. Appellants insist that because Mendel was chairman of KCI's board of directors at the time KCI decided to restructure, he was a controlling person of KCI. The only fraud alleged, however, is fraud in the preparation and dissemination of the Prospectus. Appellants allege no violation of the Act in connection with the restructuring itself. Thus, for Mendel to be liable as a controlling person in this case, he must have had the power to control KCI at the time the Prospectus was issued. The district court correctly held that Mendel was not a controlling person of KCI, and thus cannot be secondarily liable for KCI's alleged securities law violations.

We likewise affirm the district court's grant of summary judgment in favor of Mendel on appellants' count three state-law claims. Under Alabama law, fraud is the "[s]uppression of a material fact which the party is under an obligation to communicate." Ala.Code § 6-5-102 (1995). There is no evidence in the record that Mendel was under any obligation to communicate anything to the appellants that would support appellants' state law claims. Appellants were shareholders of KCI, not KCLC. As previously discussed, Mendel had no role in the management of KCI at the time the Prospectus was issued, and thus he did not stand in a fiduciary relationship to KCI's shareholders with respect to the

---

of the entity primarily liable" means simply abstract power to control, or actual exercise of the power to control.

issuance or the contents of the Prospectus.

AFFIRMED.