**In re MILLER INDUSTRIES, INC. SECURITIES LITIGATION.**

**Civil Action No. 1:97–CV–2811–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 21, 1998.

Todd S. Collins, Nicholas J. Guiliano, Berger & Montague, Philadelphia, PA, pro hac vice, Martin D. Chitwood, Christi Cannon Mobley, Chitwood & Harley, Atlanta, GA, Kurt Olsen, Olsen Law Firm, Washington, DC, pro hac vice, for Plaintiffs.

Peter Quirk Bassett, Oscar N. Persons, Rebecca McLemore Lamberth, Jenna Lynne Fruechtenicht, Alston & Bird, Atlanta, GA, for Defendants.

## ORDER

THRASH, District Judge.

This is a complex securities litigation case. It is before the Court on the Defendants' Motion to Dismiss the Amended Complaint [Doc. No. 25]. Before the Plaintiffs filed their Amended Consolidated Class Action Complaint, the Defendants had filed a Motion to Dismiss the Original Complaint [Doc. No. 12]. That original motion to dismiss [Doc. No. 12] has been rendered moot by the subsequent Amended Complaint and is therefore denied. For the reasons set forth below, the Motion to Dismiss the Amended Complaint is granted in part and denied in part.

## I. BACKGROUND

The Plaintiffs filed this consolidated shareholder action asserting various securities-fraud claims against (1) Miller Industries, Inc.; (2) William G. Miller, Chairman of the Board of Directors and Co–Chief Executive Officer of Miller Industries; (3) Jeffrey I. Badgley, President, Co–Chief Executive Officer, and a member of the Board; (4) Frank Madonia, Vice–President, Secretary, and General Counsel; (5) H. Patrick Mullen, Director; (6) L. Stanley Neely, Vice–President, President of Miller Industries' Financial Services Group; (7) Daniel N. Sebastian, Director; and (8) Richard H. Roberts, Director. The Plaintiffs consist of members of a potential class who purchased Miller Industries' common stock during the class period between November 6, 1996, through September 11, 1997.

Miller Industries is a Tennessee corporation with its principal place of business in Norcross, Georgia. It is in the business of providing vehicle towing and recovery equipment systems and services. Since 1990, Miller Industries has grown principally by acquiring towing equipment manufacturers and distributors, and towing services companies. Miller Industries markets its towing services under the RoadOne brand name. It manufactures and distributes towing and recovery equipment under various brand names.

This securities-fraud case is based primarily upon Defendants' alleged misrepresentations and omissions made in various public statements during the class period. The alleged misrepresentations and omissions related, directly or indirectly, to the rate of expected earnings growth at Miller Industries. The Plaintiffs purchased Miller Industries common stock during the class period. They allege that during the class period the price of Miller Industries' common stock was inflated because of these alleged misrepresentations and omissions, and that they purchased their shares at these inflated prices. The Plaintiffs allege that on September 12, 1997, the Defendants disclosed the results of their operations for the quarterly period ending July 31, 1997. These quarterly results revealed that the rate of growth in earnings had slowed significantly to only seven percent, much lower than the securities markets were expecting. The Plaintiffs allege that the price of Miller Industries' common stock fell more than 30 percent on September 12, 1997, causing them to incur significant financial losses. Based on these allegations, Plaintiffs assert that each Defendant knowingly and recklessly violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated by the Securities Exchange Commission pursuant to Section 10(b). The Plaintiffs further assert that the individual Defendants are liable under section 20(a) of the Securities Exchange Act as control persons by virtue of their executive positions and knowledge of Miller Industries' businesses and operations.

The Defendants have moved to dismiss the case in its entirety under Fed.R.Civ.P. 12(b)(6) for failure to state a claim [Doc. No. 25]. The Defendants contend that: (1) the Complaint fails to comply with the heightened-pleading standards of Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67, 109 Stat. 743 (codified at 15 U.S.C. § 78u–4(b)); (2) the Complaint fails to make sufficient allegations with respect to each individual Defendant as to the elements of both a Rule 10b–5 fraud claim and Section 20(a) control claim; (3) the Defendants had no duty of disclosure with respect to the alleged misrepresentations and omissions; and (4) their actions and decisions were, at most, corporate mismanagement and not fraud. The Plaintiffs respond by arguing that the Amended Complaint properly identifies each

Defendant's fraud with particularity and satisfies the heightened-pleading standards of Rule 9(b) and the PSLRA. The Plaintiffs argue that the Defendants had a duty to disclose material information because that information was significant to the reasonable investor. Finally, the Plaintiffs argue that they sufficiently alleged controlling-person liability with respect to the individual Defendants under Section 20(a).

## II. STANDARDS FOR A MOTION TO DISMISS

■ Generally, a complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). The Court must accept as true the facts pleaded in the complaint and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Exhibits and affidavits attached to the complaint may also be considered as part of the complaint. *See* Fed.R.Civ.P. 10(c); *Breckenridge Creste Apartments v. Citicorp.,* 826 F.Supp. 460, 464 (N.D.Ga.1993), *aff'd,* 21 F.3d 1126 (11th Cir. 1994); *S.E.C. v. Shiell,* No TCA 76–204, 1977 WL 1044 at *2–3 (N.D.Fla. Sept. 27, 1977); *see also Schnell v. City of Chicago,* 407 F.2d 1084, 1085 (7th Cir.1969).

## III. RULE 10b–5 CLAIMS

Section 10(b) of the Securities Exchange Act makes it unlawful to use in connection with the mails or facilities of interstate commerce any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe ...." 15 U.S.C. § 78j. The SEC has adopted Rule 10b–5 which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary

in order to make the statements made, in the light of circumstances under which they were made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

■ To state a claim upon which relief can be granted for federal securities fraud under Rule 10b–5, a plaintiff must allege that "in connection" with the purchase or sale of securities: (1) the defendant made a false statement or omission of material fact; (2) with scienter; (3) upon which the plaintiff justifiably relied; and (4) that caused the plaintiff to suffer injury. *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997); *Bruschi v. Brown,* 876 F.2d 1526, 1528 (11th Cir.1989). The Plaintiffs rely upon the "fraud on the market" doctrine to show reliance. The doctrine's premise is that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, all material misrepresentations." *Basic Inc. v. Levinson,* 485 U.S. 224, 246, 108 S.Ct. 978, 991, 99 L.Ed.2d 194 (1988). In the context of this Motion to Dismiss, the Defendants do not challenge the Plaintiffs' reliance on this doctrine.

### A. FALSE STATEMENTS OR OMISSIONS

■ Complaints alleging fraud must meet the heightened-pleading standards of Rule 9(b), which requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A fraud claim meets the requirements of Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral presentations, who made the statements, the time and place of the statements, the contents of the statements or manner in which they misled the plaintiff, and what the defendants gained as a consequence. *Brooks v. Blue Cross and Blue Shield of Florida,* 116 F.3d 1364, 1371 (11th Cir.1997).

■ Recently, Congress passed the PSLRA which, among other things, addressed the pleading standards for fraud as applied in the context of securities class action lawsuits. The PSLRA requires a securities-fraud plaintiff to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). If an allegation regarding a statement or omission is made on information and belief, the complaint must state with particularity the facts on which the belief is formed. *Id.* Further, as to each statement or omission, the plaintiff must set forth particular facts that give rise to a strong inference that the defendants acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). A complaint that fails to comply with any of these requirements must be dismissed. 15 U.S.C. § 78u–4(b)(3)(A).

■ In this case, the Plaintiffs claim that the Defendants made certain fraudulent misrepresentations and omissions relating generally to the rate of growth of earnings at Miller Industries, in essence a claim of fraudulent accounting. To state a claim for accounting fraud, a plaintiff must adequately plead facts sufficient to support a conclusion that the defendants prepared false financial statements, and that the alleged financial fraud was material. *Zeid v. Kimberley*, 973 F.Supp. 910, 922 (N.D.Cal.1997). Although the complaint need not specify the exact dollar amount of each accounting error, it must identify particular transactions underlying the alleged accounting irregularities. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 926–27 (9th Cir.1993), *cert. denied*, 513 U.S. 917, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994). In the Amended Complaint, the Plaintiffs allege that the Defendants artificially inflated and supported Miller Industries' stock price by materially misleading the public with respect to the actual rate of revenue growth and profitability in its continuing operations. The Plaintiffs allege several specific violations of Generally Accepted Accounting Principles ("GAAP"), which are the conventions, rules and procedures that constitute the professional standards of the accounting profession. *See Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297, 1304 (C.D.Cal.1996). The overstatement of revenues and income in violation of GAAP may constitute false or misleading statements of material fact in violation of Rule 10b–5. *See Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1472 (N.D.Ga.1997); *In re Discovery Zone Securities Litig.*, 943 F.Supp. 924, 936–37 (N.D.Ill.1996); *Marksman Partners*, 927 F.Supp. at 1305.

Specifically, the Plaintiffs claim that the Defendants materially misrepresented the revenues of an acquisition, Vulcan International, Inc., in the November 6, 1996, Prospectus and Registration. This document was signed by all of the individual Defendants. (Doc. No. 19, Amended Complaint at ¶¶ 33–34). The Plaintiffs allege that the Defendants violated GAAP by intentionally and improperly understating Vulcan's pre-merger revenues, which then effectively overstated the growth of Miller Industries' post-merger revenues. (*Id.* at 34–38, 43). The Plaintiffs allege that the Defendants' failure to "gross up" in a proper fashion the Vulcan acquisition resulted in materially misleading revenue growth information in subsequent public statements, including the Defendants' (1) December 10, 1996, announcement; (2) October 1996, Form 10–Q filed with the Securities and Exchange Commission; (3) March 6, 1997, press release; (4) January, 1997, Form 10–Q; (5) July 8, 1997, announcement; and (6) 1997 Form 10–K (*Id.* at 41, 42, 54, 62, 63). Second, the Plaintiffs claim that the Defendants materially overstated Miller Industries' revenue growth in its core manufacturing business by combining with it revenue from Miller Industries' non-manufacturing activities, thereby misrepresenting the growth rate of revenues in its manufacturing business. (*Id.* at 39–40). The Plaintiffs allege that these misrepresentations were contained in the December 10, 1996, Announcement and October 1996 Form 10–Q. (*Id.* at 40–42).

Third, the Plaintiffs claim that the Defendants misrepresented in their October, 1996 Form 10–Q "Other Assets" of $3.1 million by including loans to customers of questionable creditworthiness. (*Id.* at 47). The Plaintiffs allege that these loans violated certain GAAP principles by failing to reserve properly for uncollectible accounts. (*Id.* at 48). Fourth, the Plaintiffs claim that the reported income

from operations set forth in the October, 1996 Form 10–Q misrepresented the materiality of a one-time gain of $1.8 million from a patent litigation settlement. (*Id.* at 45–46). More specifically, the Plaintiffs allege that the Defendants falsely stated that the recovery was not significant to net income for the six-month period ending October 31, 1996. (*Id.* at 45). The Plaintiffs allege that this false and misleading statement violates certain GAAP principles. (*Id.*)

Fifth, the Plaintiffs claim that the Defendants improperly accepted trade-ins at inflated prices, causing Miller Industries to account for those trade-ins at a cost which was substantially greater than market price. (*Id.* at 51). The Plaintiffs allege that this violated Miller Industries' own accounting policies as described in the 1996 and 1997 Form 10–Ks and also violated certain GAAP rules. (*Id.* at 51). Sixth, the Plaintiffs claim that the Defendants misrepresented "one time" gains totaling $650,000 in the 1997 Form 10–K. (*Id.* at 64). Finally, the Plaintiffs claim that the Defendants engaged in the fraudulent practice of "channel stuffing." This is the practice of artificially stimulating revenues in the short run by offering extraordinary discounts and trade-in values on towing equipment, and by offering extended payment terms and other unusual financing arrangements to mask the deterioration of revenues in the core manufacturing business. (*Id.* at 49–50).

█ In this case, the Plaintiffs have identified numerous accounting violations relating to the overstatement of revenues during the Class period. The Plaintiffs have identified particular transactions, including the Vulcan acquisition, the false statements involving the $3.1 million in other assets, the patent settlement litigation, and the one-time gains reported in the 1997 Form 10–K. These claims are set forth with sufficient particularity to support a claim of accounting fraud against the corporate Defendant. Under the "group publication doctrine," the Plaintiffs may satisfy the pleading requirements by alleging that an individual defendant signed a publication containing misstatements. *See Blake v. Dierdorff,* 856 F.2d 1365, 1369 (9th Cir.1988); *In re U.S. Bioscience Securities Litig.,* 806 F.Supp. 1197, 1203 (E.D.Pa.1992)(allegations that outside directors signed a financial

statement provides basis for asserting liability against them under the group publication doctrine). Here, the Plaintiffs allege that each individual Defendant signed the November 6, 1996, Prospectus and Registration, and 1997 Form 10–K. Accordingly, when viewing every allegation in the Amended Complaint as true, the Court finds that the Plaintiffs have made sufficient allegations of accounting fraud against each individual Defendant to constitute false or misleading statements for the purposes of a Rule 10b–5 claim.

█ In the Amended Complaint, the Plaintiffs allege that the Defendants, in April of 1997, announced a business alliance between Miller Industries and Associates Commercial Corporation in which Associates Commercial Corporation would fund the purchase of equipment by customers of Miller Industries. (Doc. No. 19, Amended Complaint at ¶¶ 56–61). Thereafter, the Plaintiffs allege that certain securities analysts made false and misleading statements about the alliance with Associates Commercial Corporation. Specifically, the analysts made statements that Miller Industries would receive a four percent origination fee and there would be virtually no risk. (*Id.* at 57–58). The Plaintiffs allege that these statements were false and misleading because they omitted material facts that Miller Industries had agreed to indemnify Associates Commercial Corporation for up to $6.2 million in the event of default by Miller Industries' customers and that the origination fee was three percent. (*Id.* at 59). The Plaintiffs allege that the Defendants used securities analysts as conduits for the publication of the false information and that the Defendants were sufficiently entangled with those analysts to render the statements attributable to the Defendants. (*Id.* at 61).

█ To hold a defendant company liable for statements made by securities analysts, a plaintiff must show that the defendant sufficiently entangled itself with the analysts' forecast to render the predictions attributable to the defendant. *Gross,* 977 F.Supp. at 1474. To plead adoption of analysts' statements sufficiently, "[a] plaintiff must: (1) identify specific forecasts and the company insider who adopted them; (2)

point to specific interactions between the insider and the analyst which gave rise to the entanglement; and (3) state the dates when these interactions occurred." *Id.* A plaintiff must also allege specific facts showing that the analysts' statements were false and misleading and that there was no reasonable basis for them when they were made. *Id.* In this case, the Plaintiffs have failed to identify the Defendant or Defendants who were responsible for the securities analysts' reports and recommendations. They have failed to identify the specific misrepresentations that allegedly resulted in the false and misleading reports. They have failed to allege with particularity any acts of the Defendants that adopted the analysts' reports and recommendations. In general, they have failed to show the who, what, when, where and why of these claims. The Plaintiffs' claim regarding the Associates Commercial Corporation transaction is not actionable due to the failure to plead entanglement with requisite particularity. Accordingly, even when viewing every allegation in the Amended Complaint as true, the Court concludes that the Plaintiffs' Rule 10b-5 claim in paragraphs 56 through 61 of the Amended Complaint should be dismissed.

In the Amended Complaint, the Plaintiffs allege that in February of 1997, the Defendants held a conference call with numerous securities analysts and represented that growth in Miller Industries' manufacturing business was strong, that the company had an all-time record backlog, and that there was no slowdown in revenues. (Doc. No. 19, Amended Complaint at ¶ 52). The Plaintiffs, however, failed to attribute specific statements to any specific individual Defendant. Accordingly, even when viewing every allegation in the Amended Complaint as true, the Court concludes that any Rule 10b-5 claim in paragraphs 52 and 53 against the individual Defendants should be dismissed. Similarly, the Plaintiffs allege that on July 8, 1997, three weeks before the Defendants filed the 1997 Form 10-K with the SEC, Defendant William Miller represented to the investing public that Miller Industries "expected to continue [its] growth in the future." (*Id.* at 66). Again, the Plaintiffs fail to specify the who, what, where, when and why of this alleged misrepresentation. This claim against Defendant Miller does not comply with the requirements of Rule 9 or the heightened pleading standard required by the PSLRA and should be dismissed.

## B. *MATERIALITY AND A DUTY TO DISCLOSE*

Materially misleading statements or omissions by a defendant constitute the primary element of a Rule 10b-5. *Basic*, 485 U.S. at 246-47, 108 S.Ct. at 991-92. A false statement or omission will be considered "material" if its disclosure would alter the total mix of facts available to an investor and "if there is a substantial likelihood that a reasonable shareholder would consider it important" to the investment decision. *Id.* Materiality is a mixed question of law and fact. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2nd Cir.1985). A complaint may not be dismissed under Rule 12(b)(6) unless the alleged misstatements and omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.* When viewing the allegations in the Amended Complaint as true, the alleged accounting fraud misrepresentations in connection with the overstatement of revenues and masking of growth, as disclosed in the various public statements, are clearly not so unimportant that reasonable minds could not differ as to their materiality. Accordingly, the Plaintiff has sufficiently pled the element of materiality as to each Defendant.

Another aspect of the materiality question relates to the judicially created "bespeaks caution" doctrine. Under this doctrine, "forecasts, opinions, or projections" do not amount to "material misrepresentations" if "meaningful cautionary statements" accompany the forward-looking statements. *Saltzberg v. TM Sterling/Austin Assoc.*, 45 F.3d 399, 400 (11th Cir.1995)(adopting the bespeaks caution doctrine as outlined in *In re Donald J. Trump Casino Securities Litig.*, 7 F.3d 357, (3d Cir.1993), *cert. denied*, 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994), for claims under section 10(b) and Rule 10b-5). A company is under no absolute duty to reveal "soft" data which is defined as "state-

ments of subjective analysis or extrapolation, such as opinions, motives, and intentions," or the forward-looking statements noted above. *See Craftmatic Securities Litig. v. Kraftsow,* 890 F.2d 628, 642 (3rd Cir.1989). Generally, vague expressions of optimism are not actionable in claims of securities fraud. *See Siegel v. Lyons,* No. 95–3588, 1996 WL 438793 at *6 (N.D. Cal. April 26, 1996). Optimistic statements when taken in context, however, may be sufficiently misleading to constitute a basis for a Rule 10b–5 claim. *Warshaw v. Xoma Corp.,* 74 F.3d 955, 959 (9th Cir.1996). The Court concludes that Defendant Miller's July 8, 1997, statement of general optimism concerning the companies' continued growth was not a material misstatement. Therefore, the claims based upon this statement should be dismissed on this ground as well.

In the Amended Complaint, the Plaintiffs allege that the Defendants have continuously represented during the class period that they intended to vertically integrate the towing industry. (Doc. No. 19, Amended Complaint at ¶ 72). The Plaintiffs allege that on January 9, 1998, Miller Industries announced that the antitrust division of the United States Department of Justice was conducting an investigation of competition in the towing industry which included a request for Miller Industries to preserve documents relating to its acquisitions. (*Id.* at 78). The Plaintiffs claim that Miller Industries 1996 and 1997 Form 10–K omitted information that Miller Industries "vertical integration" strategy could give rise to violations of the Sherman Act, 15 U.S.C. § 2. (*Id.* at 79). The Defendants contend that they had no duty of disclosure as to the alleged misconduct under the Sherman Act.

"Silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic,* 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17. Materiality alone is not sufficient to place a company under a duty of disclosure. *See In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir.1997), *cert. denied,* ⸺ U.S. ⸺, 118 S.Ct. 1675, 140 L.Ed.2d 813 (1998). The Federal securities laws do not impose a duty upon parties to admit publicly they may be violating the law. *See Lewis v. Chrysler Corp.,* 949 F.2d 644, 652 (3rd Cir. 1991). Accordingly, the Plaintiffs' Rule 10b–5 claim in paragraphs 72–79 of the Amended Complaint referring to the omission of potential antitrust culpability should be dismissed because the Defendants were under no duty to disclose potential but conjectural antitrust liability.

## C. SCIENTER

The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976). With regard to scienter, the PSLRA requires that plaintiffs must set forth as to each statement or omission particular facts that give rise to a strong inference that the defendants acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). The application of the PSLRA's standard has produced considerable debate in the district courts. Before the enactment of the PSLRA, the Second Circuit held that a plaintiff could properly plead scienter by alleging (1) facts constituting strong circumstantial evidence of reckless or conscious misbehavior, or (2) facts showing that the defendants had both motive and opportunity to commit fraud. *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2nd Cir.1994).

Since the PSLRA's enactment, several courts have held that the PSLRA's requirements for pleading scienter is consistent with both aspects of the Second Circuit's rule. *Fugman v. Aprogenex Inc.,* 961 F.Supp. 1190, 1195 (N.D.Ill.1997); *Rehm v. Eagle Fin. Corp.,* 954 F.Supp. 1246, 1250–53 (N.D.Ill.1997); *Marksman Partners,* 927 F.Supp. at 1311. Conversely, other courts have concluded that Congress intended to eliminate the "motive and opportunity" prong of the Second Circuit's pleading standard and that the plaintiff must set forth specific facts creating a strong inference of knowing misrepresentation on the part of the defendants. *Norwood Venture Corp. v. Converse Inc.,* 959 F.Supp. 205, 208 (S.D.N.Y.1997); *In re Silicon Graphics, Inc. Securities Litigation,* 970 F.Supp. 746, 757 (N.D.Ca.1997). Thus, the courts in *Norwood* and *Silicon* held that the PSLRA intended a higher pleading requirement than the Second Circuit by not codify-

ing its motive, opportunity and recklessness standards. The courts adopting the Second Circuit's scienter requirement and those imposing a more stringent standard have both cited the PSLRA's contradictory legislative history in support of the respective positions. *Compare Rehm,* 954 F.Supp. at 1250–53 *with Silicon,* 970 F.Supp. at 754–57.

Here, in view of the dismissal of a number of the claims against the individual Defendants, the Court need not resolve the conflict as to the governing scienter standard. When viewing the allegations in the Amended Complaint as true, the Court finds that Plaintiffs have made sufficient allegations, taken as a whole, of conscious behavior under the more stringent *Silicon* standard that requires pleading facts that show an inference of fraudulent intent by the Defendants. Allegations of GAAP violations, when combined with other circumstances suggesting fraud, may create a strong inference of scienter. *See Malone v. Microdyne Corp.,* 26 F.3d 471, 479 (4th Cir.1994); *Marksman Partners,* 927 F.Supp. at 1313. In this case, the Plaintiffs have alleged that the Defendants have engaged in a number of accounting practices to artificially inflate and support Miller Industries' stock price notwithstanding the downturn in its core business. The Plaintiffs allege that the Defendants numerous fraudulent accounting practices, including GAAP violations, resulted in a dramatic overstatement of revenues.

In addition, the Plaintiffs allege that each of the individual Defendants sold more than 2,188,700 shares of Miller Industries' common stock, valued in excess of $53 million, as part of a public offering in November of 1996. The Plaintiffs further allege that this insider trading, which occurred at the beginning of the class period, was dramatically out of line with prior trading practices. Unusual insider trading during the class period may support a strong inference of scienter. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2nd Cir.1995); *Marksman Partners,* 927 F.Supp. at 1312. The Court finds that the Plaintiffs allegations are sufficient to suggest that these significant insider stock sales at the beginning of the Class period were unusual. Accordingly, the Plaintiffs' allegation, taken together as a whole, create a strong inference that the Defendants possessed a mental state embracing intent to deceive, manipulate, or defraud at the time of the alleged misrepresentations.

### D. *CAUSATION*

Plaintiffs must prove both actual causation (transaction causation) and proximate causation (loss causation) to prevail on their Rule 10b–5 claims. *Bruschi v. Brown,* 876 F.2d 1526, 1530 (11th Cir.1989). To plead transaction causation sufficiently, the Plaintiffs can allege that the Defendants' misrepresentations or omissions induced the Plaintiffs to make the investment. *In re Checkers Securities Litig.,* 858 F.Supp. 1168, 1177 (M.D.Fla.1994). To plead loss causation sufficiently, the Plaintiffs can allege they would not have invested had they known the truth, and that the untruth was in some reasonable direct way responsible for the loss. *Id.* A review of the Complaint reveals that the Plaintiffs have adequately plead both actual and loss causation.

### E. *CORPORATE MISMANAGEMENT*

The Defendants contend that the Plaintiffs essentially allege non-actionable corporate mismanagement and differences in business judgment. This contention is without merit. The federal securities laws do not regulate internal corporate mismanagement. *Santa Fe Indus. v. Green,* 430 U.S. 462, 477, 97 S.Ct. 1292, 1302–03, 51 L.Ed.2d 480 (1977). Generally, the business judgment rule protects corporate management from liability when making good faith business decisions. *See Munford, Inc. v. Valuation Research Corp.,* 98 F.3d 604, 611 (11th Cir. 1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 739, 139 L.Ed.2d 675 (1998). In this case, the Court concludes that the Plaintiffs have adequately alleged Rule 10b–5 claims rather than mere corporate mismanagement or differences in business judgment claims.

### IV. *SECTION 20(a) CLAIM*

Under Section 20(a) of the Securities Exchange Act, any person who "controls" someone who violates the Act is jointly and severally liable for this violation. 15 U.S.C. § 78t(a). The Securities Exchange Act's implementing regulations define control

as "the possession, direct or indirect, of the power to direct or cause the direction of the management policies of a person." 17 C.F.R. § 230.405. To allege "controlling person" liability under Section 20, a plaintiff must allege (1) that the defendant had the power to control the general affairs of the primary violator and (2) that the defendant had the power to control the specific corporate policy that resulted in the primary violation. *Brown v. Enstar Group Inc.*, 84 F.3d 393, 396 (11th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 950, 136 L.Ed.2d 838 (1997). Here, the Plaintiffs have adequately alleged controlling-person liability against the individual Defendants. The Plaintiffs alleged that the individual Defendants were all officers and directors of Miller Industries. Plaintiffs claim that because of their management positions and/or positions as directors, the individual Defendants could control Miller Industries' general affairs, including the content of the public statements and financial statements disseminated by them. These allegations are sufficient to state a cause of action for controlling-person liability.

## V. *CONCLUSION*

The Defendants' Motion to Dismiss the Original Complaint [Doc. No. 12] is DENIED as moot. The Defendants' Motion to Dismiss the Amended Complaint [Doc. No. 25] is DENIED in part and GRANTED in part. The Motion is GRANTED to the extent that the Plaintiffs' claims contained in paragraphs 52 –53, 56–61, 66, 72–80 are DISMISSED. The Motion is DENIED in all other respects.