[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2001
THOMAS K. KAHN
CLERK

-----------------------
No. 00-12532
-----------------------
D. C. Docket No. 98-CV-2266-CV-JEC-1

ALEXANDER THEOHAROUS,
on behalf of himself and all others
similarly situated,

Plaintiff-Appellant,

versus

HENRY FONG, METROMEDIA
INTERNATIONAL GROUP, INC., ET. AL.,

Defendants-Appellees.

_____

No. 00-12533

_____
D. C. Docket No. 98-03034-CV-JEC-1

LESLIE SCHUETTE, on behalf of
herself and all others similarly situated,

Plaintiff-Appellant,

versus

EDWARD E. SHAKE,

Defendant-Appellee.

------------------------
Appealsfrom the United States District Court
for the Northern District of Georgia
------------------------
**(July 11, 2001)**


Before EDMONDSON, HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

I.

Plaintiffs Alexander Theoharous and Leslie Schuette appeal the district court's dismissal of their class action complaints against defendants Henry Fong and Metromedia International Group, Inc. alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.

II.

The plaintiffs filed these class actions on behalf of persons who purchased the securities of Roadmaster Industries, Inc. between November 7, 1995 and

August 22, 1997 (the "class period").[1] The plaintiffs allege that throughout the class period the defendants[2] made materially false and misleading statements and concealed material facts concerning Roadmaster's financial performance, thereby deceiving the investing public about the company's financial condition until its demise in bankruptcy in August 1997.

Before shutting down its operations, Roadmaster was engaged in the business of manufacturing bicycles, fitness equipment, and toys. In 1994, Roadmaster entered into an agreement with Metromedia in which Roadmaster obtained four Metromedia subsidiaries in exchange for, inter alia, approximately 39% of Roadmaster's outstanding stock ("the Metromedia transaction"). As part of this transaction, Metromedia became a party to an agreement with Roadmaster, Fong, and Edward Shake (Roadmaster's Chief Operating Officer and a board member until September 6, 1996), the purpose of which was to "provide among themselves for the future management of Roadmaster and for the composition of the Board of Directors of Roadmaster." The parties agreed to vote their

---

[1]During the class period, Roadmaster had outstanding three different classes of publicly traded securities: common stock, 11.75% Senior Subordinated Notes due 2002, and 8% Convertible Subordinated Debentures due 2003.

[2]Defendant Fong was Roadmaster's president and Chief Executive Officer until his resignation on June 20, 1997. Throughout the class period, defendant Metromedia controlled approximately 39% of Roadmaster's outstanding common stock and had the power to designate four of the nine directors on Roadmaster's board of directors.

Roadmaster shares in favor of Metromedia's four and Roadmaster's five designees to the Roadmaster board of directors, and to use their best efforts to cause at least one Metromedia-designated director to serve on each committee of the board. Fong also agreed to cause his company Equitex, Inc., a closed-end fund owning 10.5% of Roadmaster's stock, to vote its shares in support of the four Metromedia-designated directors. In addition, in connection with the Metromedia Transaction, Roadmaster amended its bylaws to provide that the Roadmaster board could adopt, alter, or repeal the amended bylaws only by an affirmative vote of two-thirds of its nine directors, and that a two-thirds vote of outstanding shares was required for shareholders to adopt, amend, alter, or repeal any provision of the amended bylaws. Thus, Metromedia's four board designees and 39% equity stake gave it a veto power on these issues.

During the two-plus years following the Metromedia transaction, although Roadmaster's financial statements indicated that business was down, its press releases consistently predicted financial recovery and growth. For example, Fong was quoted as saying that the sale of one of Roadmaster's subsidiaries "resulted from [Roadmaster's] ongoing strategic plan, rather than pressure from creditors;" and Roadmaster stated in a 1996 press release that its "restructuring efforts in the fitness division will lead to improved profitability," and predicted in a 1997 press

4

release that "we . . . expect 20% revenue growth in 1997 over 1996." On August 22, 1997, however, Roadmaster announced that it was in a "crucial financial situation," and that it had failed to make the August 15, 1997 interest payments on its 8% debentures. One week later, on August 29, 1997, Roadmaster filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.

Theoharous filed his class action on August 19, 1998, and Schuette filed hers on October 18, 1998. The district court dismissed Theoharous's complaint because it (1) failed to allege Fong's scienter sufficiently,[3] (2) failed to allege that Metromedia directly made any misrepresentations or omissions that could result in liability under Section 10(b) of the Exchange Act, and (3) failed to allege facts upon which Metromedia could be held liable as a "controlling person" under Section 20(a). The district court dismissed Schuette's complaint as barred by the statute of limitations.[4] Upon through review of the record, we affirm.

III.

---

[3]The district court also concluded that Fong was not liable under Section 20(a) as a controlling person of Roadmaster because the complaint failed to allege facts sufficient to support a finding that Roadmaster was primarily liable for violating Section 10(b) or Rule 10b-5.

[4]The district court also concluded that had Schuette's complaint not been barred by the statute of limitations, the court would have dismissed her complaint on the same grounds on which it dismissed Theoharous's.

"We review the district court's order of dismissal de novo and will uphold a dismissal only if it appears beyond doubt that the allegations in the complaint, when viewed in the light most favorable to the plaintiff, do not state a claim upon which relief can be granted." Dillard v. Baldwin County Comm'rs, 225 F.3d 1271, 1275 (11th Cir. 2000).

IV.

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the SEC, provides that

> It shall be unlawful for any person, directly or indirectly, by the use of
>
> any means or instrumentality of interstate commerce, or of the mails
>
> or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state
>
> a material fact necessary in order to make the statements made, in the
>
> light of the circumstances under which they were made, not
>
> misleading, or

6

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. "A successful cause of action under Section 10(b) or Rule 10b-5 requires that the plaintiff prove (1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiff's loss." McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir. 1989).

Regarding the scienter element, the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 et seq., (the "PSLRA") provides that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). There are two relevant "states of mind" under the PSLRA. First, for "forward-looking"[5] statements, "the plaintiff

---

[5]
The term "forward-looking statement" means--
(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
(D) any statement of the assumptions underlying or relating to any statement described in

must prove that the defendant made the statement with 'actual knowledge' that it was 'false or misleading.'" Harris v. IVAX Corp., 182 F.3d 799, 803 (11th Cir. 1999) (quoting 15 U.S.C. § 78u-5(c)(1)(B)(i)).[6]  Second,  for statements that are not "forward-looking," the plaintiff must allege particular facts giving rise to a strong inference that the defendant acted "in a severely reckless manner."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1287 (11th Cir. 1999).  "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."  Id. at 1282 n.18 (internal citations omitted).

 A.  *The allegations against Fong.*

---

subparagraph (A), (B), or (C);
(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or
(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.
15 U.S.C. § 78u-5(i)(1).

[6]In addition, the PSLRA shields defendants from liability for forward-looking statements, regardless of defendant's state of mind, if the statements are either (1) "identified as . . . forward-looking statement[s], and . . . accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]," or (2) "immaterial."  15 U.S.C. § 78u-5(c)(1)(A)(i) & (ii).

Paragraph 69 of the complaint alleges that "on January 29, 1996, Fong was quoted as stating falsely that the [sale of one of Roadmaster's subsidiaries] 'resulted from [Roadmaster's] ongoing strategic plan, rather than pressure from creditors.'" (second alteration in original). Because this statement was not forward-looking, the plaintiffs were required only to allege particular facts giving rise to a strong inference that Fong acted with severe recklessness when he made the statement. As the district court correctly concluded, however, because the plaintiffs did not allege the <u>context</u> in which Fong made this statement, it does not appear from the face of the complaint that Fong must have known that the statement presented a danger of misleading buyers or sellers. As such, the plaintiffs failed to plead with particularity Fong's scienter with respect to this statement, so paragraph 69 does not state a claim under the PSLRA.

Paragraph 76 alleges that "[i]n the Annual Report to Shareholders filed with the SEC in April 1996 . . . , Roadmaster heralded the [sale of one of its subsidiaries] as marking the 'turnaround' for the company." This paragraph does not state a claim against Fong because it does not attribute any statement to him. Even if the paragraph had attributed the statement to Fong, it would have failed to state a claim against him because it does not allege with particularity Fong's scienter with respect to the statement. Because the statement pertained to future

9

economic performance, it was foward-looking, and the plaintiffs therefore would have been required to allege that Fong possessed actual knowledge of the statement's falsity, which the plaintiffs did not do.

Paragraph 95 alleges that "Roadmaster stated in a press release that its 'restructuring efforts in the fitness division will lead to improved profitability,' and [that] it was 'confident [that] these measures will favorably impact the fitness business as the company enters a new program year." (second alteration in original). Because these statements pertained to future economic performance, they were forward-looking. As such, the plaintiffs were required to allege with particularity facts creating a strong inference that Fong knew the statements to be false. Because the plaintiffs failed to do so, paragraph 95 failed to state a claim against Fong.

Paragraph 96 alleges that Fong stated in a press release that "[t]he sale of Roadmaster's Bicycle Division will focus management on two significant opportunities to build shareholder value," and that several of Roadmaster's initiatives "are expected to restore the Fitness Division to positive cash flow contribution." Again, because these statements were forward-looking, the plaintiffs were required to allege particular facts creating a strong inference that

10

Fong knew that the statements were false. Because the plaintiffs did not satisfy this burden, paragraph 96 failed to state a claim against Fong.

Similarly, the statements alleged in paragraphs 115[7] and 117[8] were forward-looking because they pertained to future economic performance. Because the plaintiffs failed to allege particular facts indicating that Fong knew that the statements were false, the district court did not err in concluding that paragraphs 115 and 117 failed to state a claim against Fong.

Moreover, the district court did not err in finding that the plaintiffs failed to allege with particularity any false or misleading statements in paragraphs 59, 98, and 102. Paragraph 59 alleges that "Roadmaster represented in a press release that a reported increase in its gross margin for the third quarter of 1995 'reflects a solid and improving core business.'" Paragraph 98 alleges that Fong stated in a press release that "[t]he results for the second quarter [of 1996] reflect the completion of a difficult season in our fitness equipment business," and that "the Flexible Flyer and American Playworld brands have great potential and continue to be market leaders in their respective categories and strong profit performers for the

---

[7]E.g., "With the exception of the seasonally weak second quarter, we believe that the DP unit may be profitable in each quarter this year."

[8]E.g., "We now have a totally toy focused management and expect 20% revenue growth in 1997 over 1996."

company." Paragraph 102 alleges that Fong stated in a press release that "we are much stronger financially as a result of the sale of [certain] businesses to Brunswick." Because the plaintiffs failed to plead any particular facts indicating whether or how any of these statements were false or misleading, these paragraphs failed to state a claim under the PSLRA[9] and failed to comply with Fed. R. Civ. P. 9(b).[10]

In summary, the plaintiffs failed to state a claim against Fong for violating Section 10(b) of the Exchange Act because they did not allege with particularity statements that Fong made that were false or misleading, or failed to allege particular facts creating a strong inference that Fong made false or misleading statements with the level of scienter that the PSLRA requires.

---

[9]15 U.S.C. § 78u-4(b)(1) states that
In any private action arising under this chapter in which the plaintiff alleges that the defendant--
(A) made an untrue statement of a material fact; or
(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

[10]Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

The plaintiffs also failed to state a claim against Fong as a "controlling person" of Roadmaster under Section 20(a) of the Exchange Act. Section 20(a) provides that:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). In order to state a Section 20(a) claim against Fong, the plaintiffs had to allege (1) that Roadmaster violated Section 10(a) of the Exchange Act, (2) that Fong had the power to control the general business affairs of Roadmaster, and (3) that Fong "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." See Brown v. Enstar Group, Inc., 84 F.3d 393, 396 (11th Cir. 1996). For the same reasons that the plaintiffs failed to state a claim under Section 10(a) against Fong, they have failed to state a claim under Section 10(a) against

13

Roadmaster. Fong, therefore, cannot be liable under Section 20(a) as a controlling person of Roadmaster.

B. *The allegations against Metromedia.*

In order to state a Section 20(a) claim against Metromedia, the plaintiffs had to allege (1) that Roadmaster violated section 10(a) of the Exchange Act, (2) that Metromedia had the power to control the general business affairs of Roadmaster, and (3) that Metromedia "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." See 84 F.3d at 396. As the district court correctly found, the plaintiffs failed to allege facts sufficient to satisfy any of the three prongs of this test.

"The term control (including the terms controlling, controlled by and under common control with) means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."
17 C.F.R. § 230.405. In attempting to allege that Metromedia controlled Roadmaster (1) generally and (2) specifically with respect to the alleged misrepresentations and omissions, the plaintiffs relied primarily on the facts that Metromedia owned 39% of Roadmaster's stock and was a party to an agreement that guaranteed the election of Metromedia designees to four of Roadmaster's nine

14

directorships.[11]  These facts, which proved only that Metromedia held a minority interest in Roadmaster, did not establish that Metromedia had the power to control the general business affairs of Roadmaster, nor that Metromedia had the power to control or influence the "specific corporate policy which resulted in" the alleged misconduct.  As such, Metromedia could not be held liable as a controlling person of Roadmaster under Section 20(a), even if plaintiffs had alleged a primary violation of Section 10(b) against Roadmaster, which they have not.

*C.  The untimeliness of the Schuette complaint.*

Schuette filed her original complaint on October 19, 1998.  Claims under Section 10(b) of the Exchange Act and Rule 10b-5 must be brought "within one year after the discovery of the facts constituting the violation."  Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991).[12] "Discovery occurs when a potential plaintiff has inquiry or actual notice of a violation."  Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 670 (7th Cir. 1998). Schuette's claims are barred, therefore, if she was on inquiry notice of the alleged violations before October 19, 1997.  "Inquiry notice is 'the term used for

---

[11]Notably, the shareholder agreement required Metromedia to vote its shares in favor of Roadmaster's five board of director designees, and stated that of Metromedia's four designees, only two could be Metromedia insiders.

[12]"Because of the derivative nature of Section 20(a) claims," the same limitations period applies to claims under that section.  See Jolly v. Pittore, No. 92 CIV. 3593 (S.D.N.Y. 1992).

knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed.'" Id.

Roadmaster filed for bankruptcy on August 29, 1997. Roadmaster's announcement that it was filing for bankruptcy was an indication that its previous reports of solid financial health were inaccurate. Indeed, Roadmaster publicly stated a week before it filed for bankruptcy that "it has been experiencing substantial cashflow deficiencies and financial difficulties, and its manufacturing facilities have been temporarily shutdown until this situation is resolved" (the "August 22 Release"). These facts were sufficient to put Schuette on inquiry notice of the possibility that Roadmaster had violated Section 10(b) with its prior assurances of financial health.

Schuette contends that she was not on inquiry notice until after October 19, 1997, because she could not reasonably have known from the August 22 Release or Roadmaster's filing for bankruptcy that the defendants had acted with the required scienter to violate Section 10(b). This argument fails, however, because "Plaintiff need not ... have fully discovered the nature and extent of the fraud before [he was] on notice that something may have been amiss. Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." Sterlin v. Biomune Systems, 154 F.3d 1191, 1203 (10th Cir. 1998) (alterations in original)

16

(emphasis added).  Because Schuette had inquiry notice of the alleged violations prior to October 19, 1997, the district court properly dismissed her claims as barred by the statute of limitations.

V.

For the foregoing reasons, we conclude that the district court did not err in dismissing Theoharous's and Schuette's complaints.

AFFIRMED.