**In re JDN REALTY CORP. SECURITIES LITIGATION.**

**No. 1:00–CV–396–RWS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 25, 2002.

Martin D. Chitwood, David Andrew Bain, Corey, Daniel, Holzer, Chitwood & Harley, Atlanta, GA, Jonathan M. Plasse, phv, Goodkind, Labaton, Rudoff & Sucharow, New York City, Steven E. Cauley, phv, Scott E. Poynter, phv, Gina M. Cothern, phv, Cauley, Geller, Bowman & Coates, Little Rock, AR, Emily C. Komlossy, phv, Goodkind, Labaton, Rudoff & Sucharow, Ft. Lauderdale, FL, Fred Taylor Isquith, phv, Wolf, Haldenstein, Adler, New York City, Marc A. Topaz, phv, Schiffrin & Barroway, Bala Cynwyd, PA, Burton H. Finkelstein, phv, Donald J. Enright, phv, Finkelstein, Thompson & Loughran, Washington, DC, Paul J. Gellar, phv, Cauley, Geller, Bowman & Coates, Boca Raton, FL, David Kessler, phv, Schiffrin & Barroway, Bala Cynwyd, PA, Joshua N. Rubin, phv, Abbey Gardy, New York City, Sherrie R. Savett, phv, Phyllis M. Parker, phv, Berger & Montague, Philadelphia, PA, Arthur M. Toback, phv, Toback, Hyman & Bernstein, New York City, Stanley D. Bernstein, phv, Jeffrey M. Haber, phv, Sandy A. Liebhard, phv, Bernstein, Liebhard & Lifshitz, New York City, James V. Bashian, phv, Office of James V. Bashian, Stuart D. Wechsler, phv, Samuel K. Rosen, phv, Wechsler Harwood Halebian & Feffer, New York City, David H. Weinstein, phv, Kellie A. Allen, phv, Weinstein, Kitchenoff, Scarlato & Goldman, Philadelphia, PA, Michael D. Donovan, phv, Donovan Searles, Philadelphia, PA, Norman Berman, phv, Michael Lange, phv, Berman DeValerio Pease, Tabacco, Burt & Pucillo, Boston, MA, W. Pitts Carr, Render Crayton Freeman, Carr, Tabb, Pope & Freeman, Atlanta, GA, Marc I. Gross, phv, Pomerantz, Haudek, Block, Grossman & Gross, New York City, Charles J. Piven, phv, Office of Charles J. Piven, Baltimore, MD, Henry D. Fellows, Jr., Fellows, Johnson & La Briola, Atlanta, GA, Curtis L. Bowman, phv-usa, U.S. Department of Justice, Tax Division, Washington, DC, Blake Dexter Halberg, The Halberg Law Firm, Atlanta, GA, George Edward Barrett, phv, Douglas S. Johnston, Jr., phv, Barrett, Johnston & Pars-

ley, Nashville, TN, for Kendall Jackson, on behalf of himself and all others similarly situated, Clarion–CRA Securities, Robert E. Kendall, Jr., on behalf of himself and all others similarly situated, Sidney Morse, on behalf of himself and all other similarly situated, Jim Farrell, individually and on behalf of all others similarly situated, Larry Laiks, individually and on behalf of all others similarly situated, Charles P. Pitts, on behalf of himself and all others similarly situated, Reinhard Ludin, individually and on behalf of all others similarly situated, Alfonso J. Lopez, individually and on behalf of all others similarly situated, Robin Kwalbrun, individually and on behalf of all others similarly situated, Lisa Rowan, individually and on behalf of all others similarly situated, James L. Laurita, on behalf of himself and all other similarly situated, David C. Harrison, on behalf of himself and all others similarly situated, Michael Hoffman, individually and on behalf of all others similarly situated, Howard E. Brazier, individually and on behalf of all others similarly situated, David Addington, on behalf of himself and all others similarly situated, Gerald Mitchell, Roma Mitchell, on behalf of themselves and all others similarly situated, Betty M. Lynch, on behalf of herself and all others similarly situated, Robert Dolan, Kurt R. Elster, Michael L. Campbell, Stanley Kaminski, Jay Menuskin, Henrietta T. Stavros, David N. Weiland, on behalf of themselves and all others similarly situated.

Tony Glen Powers, Kimberly Lillian Myers, Rogers & Hardin, William Gordon Leonard, Office of William G. Leonard, John Ludlow Latham, Todd Richard David, Julie M. O'Daniel, Alston & Bird, John A. Chandler, Sutherland, Asbill & Brennan, Atlanta, GA, for J. Donald Nichols, Jeb L. Hughes, C. Sheldon Whittelsey, IV, Leilani L. Jones, Ernst & Young, LLP, A.G. Edwards and Sons, Inc., J C Bradford & Co., Interstate/Johnson Lane, Inc., Stifel, Nicolaus & Company.

## ORDER

STORY, District Judge.

Plaintiffs bring this securities class action against a corporation, its subsidiary, individual officers and directors of the corporation and subsidiary, and their real estate and securities counsel. Lead Plaintiff Clarion–CRA Securities brings this action on behalf of itself and all other persons or entities who purchased JDN securities during the period from February 15, 1997, through and including April 12, 2000. Now before the Court for consideration are Defendants McCullough Sherrill, LLP, Bradley J. Taylor, and William D. Brunstad's Motion To Dismiss Plaintiffs' Complaint [83–1], Motion of Defendants Hughes and Whittelsey To Dismiss Consolidated Amended Complaint [84–1], Motion of Defendant J. Donald Nichols To Dismiss Consolidated Class Action Complaint [85–1], Motion of Defendant J. Donald Nichols for Leave To Exceed Page Limitation for Reply Brief [109–1], and Plaintiffs' Request for Oral Argument [110–1].

As a preliminary matter, the Court **GRANTS** the Motion of Defendant J. Donald Nichols for Leave To Exceed Page Limitation for Reply Brief [109–1]. In addition, the Court finds that because the parties have adequately briefed the issues in the case, oral argument is not required, and the Court hereby **DENIES** Plaintiffs' Request for Oral Argument [110–1]. After reviewing the record and considering the parties' arguments, the Court enters the following Order.

## FACTUAL BACKGROUND

The facts relied upon in this Order are taken from the Consolidated Amended

Class Action Complaint [Docket no. 71–1]. As required on a motion to dismiss, the Court has construed the pleadings broadly, has accepted all facts pleaded therein as true, and has viewed all inferences in a light most favorable to Plaintiffs.

JDN Realty Corporation ("JDN") is a real estate investment trust ("REIT"), headquartered in Georgia, that became a publicly-traded company in March 1994. (Compl.¶ 2.) JDN's subsidiary, JDN Development, Inc. ("Development"), was incorporated in December 1994 to allow Development to engage in activities in which JDN itself was prohibited from engaging due to REIT restrictions. (Compl.¶ 2.)

Defendant J. Donald Nichols was JDN's Chief Executive Officer, and Defendants Sheldon Whittelsey and Jeb Hughes were, at all relevant times, executive officers of Development. (Compl.¶ 3.) As a result of their high-level roles, Defendants Hughes and Whittelsey were deemed executive officers of JDN itself pursuant to Rule 3b–7, 17 C.F.R. § 240.3b–7, promulgated by the Securities and Exchange Commission ("SEC") under the Securities Exchange Act of 1934. (Compl.¶ 3.) Under SEC disclosure laws, JDN was thus required to disclose compensation paid to Defendants Hughes and Whittelsey and to report all related party transactions involving them. (Compl.¶ 3.)

In the Complaint, Plaintiffs allege that JDN made material misrepresentations throughout the Class Period by failing to disclose millions of dollars in compensation to Defendants Hughes and Whittelsey and by failing to disclose a litany of related party transactions. In addition, JDN issued financial statements that materially misrepresented the true financial condition of the company, in violation of its own internal policies, federal securities laws, and Generally Accepted Accounting Principles ("GAAP"). (Compl.¶¶ 4, 9, 67–68, 74–82.)

As JDN admitted in a press release dated February 14, 2000 ("the February 14th press release"), JDN and/or Development paid Defendants Hughes and Whittelsey approximately $5,000,000 in unreported compensation from 1994 to 1999.[1] (Compl.¶¶ 5, 67–68.) This compensation was paid to Defendants Hughes and Whittelsey primarily in the form of cash and land conveyances that were funded by JDN and/or Development in connection with their purchases of land from third parties. (Compl.¶ 6.) JDN's 1999 10–K,

---

1. JDN's 1999 10–K revealed that Defendant Nichols had entered into secret agreements in 1994 with Defendants Hughes and Whittelsey promising to pay them $1,000,000 and $750,000, respectively, under secret promissory notes. (Compl.¶¶ 138, 141.) Ultimately, Defendant Nichols never personally paid more than $51,332 on the notes, but instead compensated Defendants Hughes and Whittelsey through undisclosed payments from JDN and Development. (Compl.¶ 139.) Defendants Hughes and Whittelsey had worked together for JDN's predecessor and were regarded as instrumental to that company's and subsequently JDN's development efforts. (Compl. ¶¶ 136, 141, 143.) Plaintiffs allege that Defendant Nichols' secret agreements and the resulting undisclosed excessive compensation paid to Defendants Hughes and Whittelsey were designed to ensure that the two men would be compensated at levels sufficient to motivate them to stay with JDN, even though this compensation was excessive by public REIT standards. (Compl.¶¶ 71, 140, 143, 146.) Further, Plaintiffs allege that the under-the-table deals were necessary in part because, unless the company were to disclose Hughes' criminal record, JDN was unable to employ Defendant Hughes publicly as an executive officer of JDN until 1996, which marked the fifth anniversary of the expiration of Hughes' prison sentence and disbarment. (Compl.¶¶ 144–45, 147.)

dated June 15, 2000, explained that JDN and/or Development had in fifteen separate transactions: (1) directed third parties to deed outparcels of land paid for by JDN and/or Development to ALA Associates, Inc. ("ALA"), a company wholly owned by Defendants Hughes and Whittelsey;[2] (2) directed third parties to divert fees to ALA that JDN and/or Development had purportedly paid to third parties in connection with closing; and (3) in one case, contemporaneously with the purchase of land from a third party, deeded an outparcel directly to ALA. (Compl.¶¶ 6, 38–46, 49–52.)

Defendant McCullough Sherrill, LLP, through its partners Bradley J. Taylor and William D. Brunstad, (collectively "the MS Defendants") was the primary real estate counsel for JDN and was a direct participant in the improper transactions alleged in the Complaint. (Compl.¶¶ 173–99.) Prior to JDN's initial public offering, McCullough Sherrill acted as primary outside counsel to JDN Enterprises, Inc., JDN's predecessor. According to papers filed with Georgia's Secretary of State, McCullough Sherrill also incorporated ALA and was thus aware of Defendants Hughes and Whittelsey's ownership of ALA. (Compl.¶ 173.) Moreover, Defendant Brunstad became Assistant Secretary of JDN in May 1995 and was therefore an officer of JDN during the Class Period. (Compl.¶ 31.)

Either Defendant Taylor or Defendant Brunstad, each a McCullough Sherrill partner at the time, conducted the closings and prepared false or misleading documentation concerning at least fourteen (14) purchases of land by JDN and/or Development. (Compl.¶ 174.) For each real estate transaction, the MS Defendants prepared a settlement statement that misrepresented the true cost of the property actually being acquired by JDN, which was then forwarded by the MS Defendants to JDN in order to obtain the funds that were purportedly to be paid to the seller for the subject land. (Compl.¶ 175.) Likewise, when Development was the purchaser, JDN would forward to Development the funds for the purchase price as specified by McCullough Sherrill. (Compl.¶ 176.) Although not reflected on the settlement statement, the funds forwarded included an amount for outparcels that were conveyed directly from the seller of the property to ALA and/or amounts paid to ALA as fees or commissions. (Compl.¶ 176.)

In addition, the MS Defendants prepared closing binders for JDN and Development for each of these real estate transactions. (Compl.¶ 177.) Although the MS Defendants were aware of the deeds that conveyed outparcels to ALA and knowingly allowed the disbursement of JDN funds to ALA, they prepared closing binders that excluded any evidence of the transfers to ALA. (Compl.¶¶ 177, 179.) At the same time, the MS Defendants prepared closing binders for the sellers that reflected the true nature of the transactions. (Compl.¶ 177.)

JDN and Development used these settlement statements and closing binders to quantify the value of their assets on their financial statements. (Compl.¶ 177.) Because the land conveyances and payments to ALA were not reflected on the settlement statements, the settlement statements indicated a higher cost per acre than was actually paid. (Compl.¶ 177.)

---

**2.** Defendants Hughes and Whittelsey incorporated ALA on October 28, 1994, just before Development was created. (Compl. ¶¶ 6, 141.)

Thus, the cost of the land actually held as an asset by JDN or Development was materially inflated in the financial statements, and as a consequence, the basis of certain properties acquired by JDN or Development was falsely overstated. (Compl.¶ 177.) In addition, JDN did not book the costs of the land deeded to ALA or the fees paid to ALA as executive compensation to Defendants Hughes and Whittelsey, as it was statutorily required to do, and as a result, the 1999 10–K reflected that JDN's inaccurate reporting caused an artificially inflated basis in its assets, an understatement of expenses, and a tax liability that was not discovered until the year 2000. (Compl.¶¶ 7–8, 177.) This practice also resulted in an overstatement of JDN's equity in net income of unconsolidated entities (which primarily represented JDN's investment in its subsidiary, Development, which performed significant operations of the company), an overstatement of JDN's net income, and an overstatement of JDN's funds from operations ("FFO"), among other material line items. (Compl.¶¶ 8, 53–58.)

In its February 14th press release, JDN admitted that its CEO, Defendant Nichols, was aware of all but one of these transactions. (Compl.¶ 9.) That same day, Defendant Nichols resigned as CEO. JDN also admitted that it had violated its own internal policies by failing to record properly these transactions in JDN's books and records and in the consolidated financial statements issued to the public. (Compl.¶ 9.)

On April 12, 2000, in another press release ("the April 12th press release"), JDN disclosed additional reasons for JDN's misleading reported financial information and public disclosures: JDN revealed that a special committee of the Board had discovered "certain discrepancies in cost and other information underlying certain leases and real estate sales with the company's two largest tenants," which could subject the company to claims by Wal–Mart Stores, Inc. ("Wal–Mart") and Lowe's Companies, Inc. ("Lowe's"). (Compl.¶ 10.) Prior to this announcement, JDN's successes had largely been attributed to its good relationship with these two tenants. (Compl.¶ 10.)

Details surrounding these "cost discrepancies" were provided in an 8–K filed on May 23, 2000, in connection with an Estoppel and Release Agreement ("Agreement") signed with Wal–Mart and Lowe's. (Compl.¶ 11.) In the Agreement, JDN disclosed that it had passed through to Wal–Mart and Lowe's artificially inflated project costs resulting from the inaccurately recorded compensation payments to and related party transactions with Defendants Hughes and Whittelsey. (Compl.¶¶ 11, 60, 62.) By overstating its costs, JDN had charged Wal–Mart and Lowe's too much money, which in turn, had falsely inflated JDN's revenues and earnings. (Compl.¶¶ 12, 62.) According to the Agreement, Wal–Mart and Lowe's determined that they had been overcharged at least $5,000,000 each. (Compl.¶¶ 12, 62–63.)

As a result of JDN's inaccurate record-keeping and improper accounting, none of the financial statements that JDN issued prior to the filing of its 1999 10–K complied with GAAP and SEC disclosure laws, despite JDN's previous representations to the contrary. (Compl.¶¶ 13, 74–82.) Additionally, none accurately reported the company's true financial condition, and in its April 12th press release, JDN warned that "its consolidated financial statements for all annual and quarterly periods through

September 30, 1999, should not be relied upon." (Compl.¶ 14.) In its 1999 10–K, JDN restated most of its previously issued financial statements. (Compl.¶ 14.) The restatement resulted in a material reduction of JDN's net income, FFO, and equity in net income of unconsolidated entities. (Compl.¶ 14.) In connection with the restatement, JDN also corrected its executive compensation and related party transaction disclosures for 1995 through 1999. (Compl.¶ 53.)

Prior to the disclosures referenced above, JDN had been regarded as a highly successful company with a management that was reputed for its integrity and experience. (Compl.¶¶ 15, 86.) In the REIT industry in particular, management credibility is an important factor in an investor's decision to buy stock in the company. (Compl.¶ 15.) When the truth about JDN's inaccurate accounting practices and incorrect record-keeping emerged, at first partially on February 14, 2000, and then more fully on April 12, 2000, the price of JDN common and preferred stock fell dramatically.[3] (Compl.¶¶ 16–18, 83–84.) As a result of JDN's improprieties, the SEC opened a formal investigation into JDN on September 12, 2000. (Compl.¶ 19.) On March 5, 2001, the SEC advised JDN that the SEC's staff had recommended commencing a proceeding against JDN. (Compl.¶ 20.)

Plaintiffs bring this class action against JDN and Development, certain of their officers and directors, and their real estate and securities counsel for violations of federal securities laws. Specifically, Plaintiffs assert claims for violations of sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") and sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and Rule 10b–5 promulgated thereunder. Plaintiffs allege that Defendants fraudulently concealed material information regarding executive compensation and related party transactions and issued false and misleading financial reports during the period of February 15, 1997, through and including April 12, 2000 ("the Class Period").

After Plaintiffs filed the Consolidated Amended Class Action Complaint ("Complaint"), Plaintiffs and some of the Defendants reached a settlement. The Court granted final approval of the class action settlement on November 15, 2001.[4] This Order addresses the remaining Defendants' motions to dismiss.

## DISCUSSION

Plaintiffs assert three counts against Defendants Nichols, Hughes, Whittelsey,

---

**3.** On February 14, 2000, JDN's common stock price dropped over 40% from its previous day's close of $16.56 per share to $9.8125 per share, for a total market capitalization loss of approximately $233,000,000. The price of JDN's preferred stock dropped over 15% from its previous day's close of $19.625 per share to $16.50 per share, for a total market capitalization loss of approximately $6,250,000. On April 12, 2000, JDN's common stock price dropped 23% from its previous day's close of $12.563 per share to $9.563 per share, for an additional market capitalization loss of approximately $100,000,000. The price of JDN's preferred stock dropped 23% from its previous day's close of $19.313 per share to $14.750 per share, for an additional market capitalization loss of approximately $9,000,000. (Compl.¶¶ 16–18, 83–84.)

**4.** The Court's "Judgment and Order of Dismissal" is docketed at [107–1]. The settling Defendants included JDN Realty Corporation, JDN Development Company, Inc., William J. Kerley, Elizabeth L. Nichols, Craig V. McNab, Haywood D. Cochrane, Jr., William B. Greene, William G. Byrnes, and John D. Harris, Jr.

McCullough Sherrill, Taylor, and Brunstad: (1) a claim that Defendants are liable as control persons of JDN and Development under section 15 of the Securities Act, (2) a claim for securities fraud under section 10(b) of the Exchange Act, as amended by the PSLRA, and Rule 10b–5 promulgated thereunder, and (3) a claim that Defendants are liable as controlling persons under section 20(a) of the Exchange Act. Plaintiffs assert an additional claim against Defendant Nichols for violations of section 11 of the Securities Act.

Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity under Rule 9(b) and under the PSLRA, 15 U.S.C. § 78u–4(b). Defendants contend that the Complaint is subject to dismissal because Plaintiffs fail to plead scienter with the requisite particularity. Defendants also argue that Plaintiffs have failed to allege adequately secondary liability as "controlling persons." The Court first turns to the applicable standards and substantive law.

## A. Standards for Motions To Dismiss

Federal Rule of Civil Procedure 12(b)(6) empowers the court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b). In addition, the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n. 1 (11th Cir.1999). In considering whether a plaintiff has pled securities claims adequately to withstand a motion to dismiss, the court may consider evidence outside the pleadings that is undisputedly authentic and on which the plaintiff specifically has relied in the complaint. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999); *In re Theragenics Corp. Sec. Litig.*, 105 F.Supp.2d 1342, 1348 (N.D.Ga.2000) (Thrash, J.). Additionally, the Eleventh Circuit has ruled that district courts may judicially notice at the motion to dismiss stage any relevant documents legally required by and publicly filed with the SEC. *Bryant*, 187 F.3d at 1280; *In re S1 Corp. Sec. Litig.*, 173 F.Supp.2d 1334 (N.D.Ga.2001) (Martin, J.). The court should grant a motion to dismiss only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Linder v. Portocarrero*, 963 F.2d 332 (11th Cir.1992). Motions to dismiss are disfavored and rarely granted. *Gasper v. La. Stadium and Exposition Dist.*, 577 F.2d 897, 900 (5th Cir. 1978); *Woodham v. Fed. Transit Admin.*, 125 F.Supp.2d 1106, 1108 (N.D.Ga.2000).

### 1. Securities Fraud Claims

To survive a motion to dismiss, allegations of securities fraud must satisfy the requirements of Federal Rule of Civil Procedure 9(b). That rule provides, in relevant part, that "[t]he circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). To provide a sufficient level of factual support for a claim of securities fraud, a plaintiff must plead the circumstances of fraud in detail—this means "[t]he who, what, when, where, and how." *In re World Access, Inc. Sec. Litig.*, 119 F.Supp.2d 1348, 1353 (N.D.Ga.2000) (Evans, J.). The PSLRA added several new pleading requirements

to claims arising under the Exchange Act. First, the PSLRA provides that in any private action premised on an untrue statement or omission of material fact, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Moreover, with respect to any claim where recovery is permitted "only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2). Essentially, a private securities plaintiff proceeding under the PSLRA must plead facts that constitute strong circumstantial evidence of conscious misconduct or severe recklessness.

■ Count IV of Plaintiffs' Complaint is a claim under section 10(b) of the Exchange Act, which makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe," [5] and Rule 10b–5, making it unlawful "[t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." [6] 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5. To allege securities fraud under section 10(b) and Rule 10b–5, a plaintiff must show: (1) a misstatement or omission of a material fact, (2) made with scienter, (3) on which plaintiff relied, (4) that proximately caused his injury. *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001); *Robbins v. Koger Prop., Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997); *Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir.1989) (en banc).

■ With respect to the issue of what standard Plaintiffs must meet in order to plead scienter adequately in this circuit, Plaintiffs cite to *Bryant v. Avado Brands,* 187 F.3d 1271 (11th Cir.1999). In the instant case, the operative language of the

---

**5.** Section 10 states:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . .
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.
15 U.S.C. § 78j.

**6.** Rule 10b–5 provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5.

PSLRA is that a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The Eleventh Circuit has interpreted section 78u–4(b)(2) to require a plaintiff to "plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner." *Bryant*, 187 F.3d at 1287. The Eleventh Circuit has held that:

> [s]evere recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1010 (11th Cir.1985); *see also Bryant*, 187 F.3d at 1284–85 n. 21. Thus, scienter may be shown by detailing either direct or circumstantial evidence of Defendants' actual knowledge or severely reckless state of mind. *See In re Premiere Tech., Inc.*, 2000 WL 33231639, at *6, Fed. Sec. L. Rep. P 91293 (N.D.Ga. Dec.08, 2000) (Forrester, J.).

### 2. "Controlling Person" Claims

Counts III and V of the Complaint allege that each individual Defendant is liable as a "controlling person" under section 15 of the Securities Act and section 20(a)

of the Exchange Act. Under these laws, any person who "controls" a person or entity that violates a provision of the Securities Act or the Exchange Act is jointly and severally liable for the violation. The SEC's implementing regulations define "control" as "the possession, direct or indirect, or the power to direct or cause the direction of the management policies of a person." 17 C.F.R. § 230.405.

▆ In the Eleventh Circuit, "a defendant is liable as a controlling person ... if he or she 'had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.' " *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir.1996) (citations omitted).[7] Thus, to survive a motion to dismiss, a plaintiff who asserts "controlling person" claims must allege that the defendant had the power to control both (1) the general affairs of the primary violator and (2) the specific corporate policy that resulted in the primary violation. However, a plaintiff cannot adequately plead controlling person liability if he does not adequately plead the primary violation. *See id.* at 396–97; *see also In re S1 Corp.*, 173 F.Supp.2d at 1348; *In re World Access*, 119 F.Supp.2d at 1358; *In re Theragenics Corp.*, 105 F.Supp.2d at 1362.

### B. Defendant Nichols' Motion To Dismiss

Defendant Nichols contends that: (1) Plaintiffs fail to allege facts that give rise

---

**7.** *Brown v. Enstar Group, Inc.*, in which the Eleventh Circuit announced the test for controlling person liability, involved controlling person liability under section 20(a) of the Exchange Act, rather than section 15 of the Securities Act. The controlling person analysis under section 15 of the Securities Act and section 20(a) of the Exchange Act, however, is

identical. *See Pharo v. Smith*, 621 F.2d 656, 673 (5th Cir.) ("Section 20(a) is an analogue of section 15 of the Securities Act. Therefore, we give the two sections the same interpretation.") (citation omitted), *amended by* 625 F.2d 1226 (5th Cir.1980); *see In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1367 n. 22 (S.D.Fla.2001).

to a strong inference that Defendant Nichols acted with the requisite scienter; (2) Plaintiffs do not have standing to assert a section 11 claim; and (3) Plaintiffs fail to state a claim for "controlling person" liability because Plaintiffs fail to allege facts to support the underlying primary violations.

### 1. Scienter

■ First, Defendant Nichols argues that the Complaint fails to set forth the level of scienter on Mr. Nichols part as required by the PSLRA in order to assert a section 10(b) claim for securities fraud. As discussed above, Plaintiffs must allege particular facts giving rise to a "strong inference" that Defendant Nichols had the requisite scienter to be liable for securities fraud. *See supra* section A.1. In the Eleventh Circuit, Plaintiffs must present direct or circumstantial evidence that shows that Defendant Nichols acted with conscious intent to defraud or with severe recklessness. The Eleventh Circuit has defined severe recklessness as "highly unreasonable omissions or misrepresentations that involve ... an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Bryant,* 187 F.3d at 1284–85 n. 21.

After reviewing the Complaint, and accepting all well-pleaded facts as true and drawing all inferences in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have satisfied the pleading threshold of the PSLRA and Rule 9(b) for scienter as to Defendant Nichols. Here, Plaintiffs have alleged facts that the Court finds constitute strong circumstantial evidence of Defendant Nichols' conscious misbehavior, and at a minimum, severe

recklessness. Specifically, the Complaint alleges in great factual detail that Defendant Nichols, JDN's Chief Executive Officer, consciously directed and participated in a scheme to conceal excessive executive compensation to Defendants Hughes and Whittelsey and related party transactions, which in turn produced JDN's false and misleading financial statements. Further, despite a duty to disclose, Defendant Nichols repeatedly allowed JDN to issue false public disclosures regarding executive compensation and related party transactions, and Defendant Nichols signed JDN's SEC filings that misrepresented not only JDN's financial condition but also that JDN's financial statements were prepared in accordance with GAAP and securities laws. Clearly he knew, or was severely reckless in not knowing, that these disclosures were incomplete and that he was making misrepresentations to JDN's shareholders and buyers and sellers in the securities market.

The Complaint provides that Defendant Nichols entered into secret agreements with Defendants Hughes and Whittelsey promising to pay them $1,000,000 and $750,000, respectively, under secret promissory notes, and the Complaint alleges that this compensation was excessive by public REIT standards. (Compl.¶¶ 71, 138, 140–41, 143, 146.) Ultimately, Defendant Nichols arranged for JDN and Development to compensate Defendants Hughes and Whittelsey through undisclosed payments from JDN and Development. (Compl.¶ 139.) As JDN admitted in the February 14th press release, JDN and/or Development paid Defendants Hughes and Whittelsey approximately $5,000,000 in unreported compensation from 1994 to 1999. (Compl.¶¶ 5, 67–68.) This compensation was paid to Defendants Hughes and Whittelsey primarily in the form of cash and

land conveyances that were funded by JDN and/or Development in connection with their purchases of land from third parties. (Compl.¶ 6.)

In its February 14th press release, JDN admitted that its CEO, Defendant Nichols, was aware of all but one of these transactions. (Compl.¶ 9.) Defendant Nichols was intimately involved in the scheme to use JDN's property and funds secretly to compensate Defendants Hughes and Whittelsey; in fact, he orchestrated the scheme and directed the other Defendants to conceal the payments and land conveyances in JDN's financial records. (Compl.¶¶ 158, 161, 172.) Thus, he understood, perhaps more than any other involved party, that the cost of the land actually held as an asset by Development was materially inflated on its financial statements and that the compensation paid to Defendants Hughes and Whittelsey in the form of land or commissions to ALA was not booked as compensation in JDN's records. In effect, Defendant Nichols was primarily responsible for JDN's false and misleading SEC filings and public disclosures.

However, Defendant Nichols argues that Plaintiffs' allegations do not unambiguously show that he was aware that the undisclosed compensation and related party transactions would affect JDN's financial statements. Even if the Court were to assume that Defendant Nichols truly did not know that his conduct would affect JDN's financial reports and disclosures, at a minimum, the Court finds that Defendant Nichols' conduct indicates that he sufficiently lacked prudence or caution as to constitute severe recklessness. Defendant Nichols' conduct was highly unreasonable, and he should have known that his actions posed a danger of misleading buyers or sellers. Further, because De-

fendant Nichols knew the financial reports and disclosures were false and misleading at the time JDN filed with the SEC, Nichols breached his duty to correct them. Moreover, Defendant had motive because he benefitted from his schemes: by funneling millions of dollars from JDN and Development, he avoided paying the money to Hughes and Whittelsey he owed under the promissory notes, and since he was the largest individual shareholder of JDN stock, he benefitted from JDN's inflated value and increased dividends. (Compl.¶ 163.)

With these alleged facts, the Court finds that Defendant Nichols' orchestration and participation in the scheme indicates that he intended to mislead the public, or at least that he was severely reckless and should have known his conduct would mislead the public. At this stage of the litigation, the Court finds that Plaintiffs have alleged sufficient facts showing scienter on the part of Defendant Nichols to justify proceeding with discovery. Accordingly, the Court **DENIES** Defendant Nichols' motion to dismiss the section 10(b) claim.

**2. Section 11 Claim**

Plaintiffs allege that Defendant Nichols signed a registration statement for JDN to make an offering of common stock on March 6, 1997, and that Defendant Nichols was a JDN director on the effective date of a second registration statement for an offering of preferred stock on September 17, 1998. (Compl.¶¶ 99(b), 100(b).) Plaintiffs also allege that the registration statements contained material omissions and misleading information. (Compl.¶¶ 103, 107.) Defendant Nichols argues that Plaintiffs lack standing to bring section 11 claims because Plaintiffs merely allege that they purchased stock

that is "traceable to" the public offerings at issue and because Plaintiffs did not allege reliance. However, Plaintiffs argue that the Complaint extends well beyond the pleading requirements for section 11, and the Court agrees.

Section 11 of the Securities Act, 15 U.S.C. § 77k(a), provides buyers with a cause of action against signers of a registration statement and corporate directors, among others, if the registration statement contained material misstatements or omissions at the time it became effective. 15 U.S.C. § 77k(a); *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Defendant Nichols argues that section 11 only applies when a document solicits the public to acquire securities in an initial public offering, not in the secondary aftermarket; thus, to have standing to assert a section 11 claim, a plaintiff must have purchased the stock "pursuant to" the stock offering. To support his position, Defendant Nichols relies on *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995), which addressed whether secondary purchasers may assert a claim under section 12(a)(2), not section 11 the more broadly worded statute at issue in this case, and Defendant cites some district court authority. *See* Def. Nichols' Mot. To Dismiss at 43 (citing *Rhodes v. Omega Research*, 38 F.Supp.2d 1353, 1365 (S.D.Fla.1999); *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 144 (D.N.J.1999); *Warden v. Crown Am. Realty Trust*, 1998 WL 725946, at *3, 1998 U.S. Dist. LEXIS 16194, at *9–10 n. 2 (W.D.Pa. Oct. 15, 1998); *In re WRT Energy Sec. Litig.*, Fed. Sec. L. Rep. 99,560, 1997 WL 576023 (S.D.N.Y.1997)).

However, all courts of appeal that have considered the standing issue under section 11 have uniformly recognized the broader statutory language of section 11. *See Joseph v. Wiles*, 223 F.3d 1155 (10th Cir.2000); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir.1999); *Versyss Inc. v. Coopers & Lybrand*, 982 F.2d 653 (1st Cir.1992); *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir.1967). Indeed, there is authority from the former Fifth Circuit, whose decisions represent binding precedent in this circuit,[8] that is contrary to the position advanced by Nichols. *See Columbia Gen. Inv. Corp. v. SEC*, 265 F.2d 559, 562 (5th Cir.1959).

Section 11 contains no requirement that in order to maintain an action a person must purchase stock directly "pursuant to" the registration statement. Rather, section 11 provides that "any person acquiring such security" may bring suit. 15 U.S.C. § 77k(a). Thus, to have standing under section 11, one must simply be able to trace the purchase of his securities to the registration statement that allegedly violated section 11 by containing a material misrepresentation or omission. *See In re Unicapital Corp. Sec. Litig.*, 149 F.Supp.2d 1353, 1368 n. 25 (S.D.Fla.2001) (citing *Joseph*, 223 F.3d 1155; *Hertzberg*, 191 F.3d 1076; *Versyss, Inc.*, 982 F.2d 653; *Columbia Gen. Inv. Corp.*, 265 F.2d 559; *Adair v. Bristol Tech. Sys., Inc.*, 179 F.R.D. 126, 133 (S.D.N.Y.1998)).

In the Complaint, Plaintiffs allege that they have standing to bring the section 11 claim because they purchased JDN stock "pursuant to or traceable to" the registration statements. (Compl.¶¶ 101–02.)

---

**8.** The United States Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981).

Plaintiffs present their certifications, which show that Lead Plaintiff Clarion and the Preferred Plaintiffs purchased JDN securities as follows: on March 5, 1997, Clarion purchased 20,000 shares of JDN common stock in the March 1997 Offering at the offering price of $29.00 per share; on September 10, 1998, Plaintiff Dolan purchased 2000 preferred shares, and Plaintiff Stephens purchased 800 preferred shares in the Preferred Offering at the offering price of $25.00 per share; and on September 15, 1998, Plaintiff Lynch purchased 300 preferred shares in the Preferred Offering at the offering price of $25.00 per share. (Certifications, Plaintiffs' Notice of Filing [Docket no. 98], Ex. 1.) Thus, the Court finds that Plaintiffs even meet the more stringent requirement, as Defendant Nichols argues is necessary, because they allege that they purchased the stock "pursuant to" the registration statements for the public offerings.

Here, whether Plaintiffs purchased their stock "pursuant to" or "traceable to" the registration statements, they have standing to maintain the section 11 claim against Defendant Nichols. Furthermore, because Plaintiffs purchased stock prior to the issuance of JDN's earnings statements covering the twelve-month periods after the effective dates of the registration statements,[9] a presumption of reliance is automatically triggered. *See* 15 U.S.C. § 77k(a)(5). Therefore, because the Court finds that the Plaintiffs have sufficiently pleaded a section 11 claim, the Court **DENIES** Defendant Nichols' motion to dismiss the section 11 claim.

9. Plaintiffs Stephens, Dolan, and Lynch purchased preferred stock in the Preferred Offering in September 1998, and JDN did not issue its 1999 10–K, which would have been the first earnings statement to cover a twelve-month period following the effective date for the Preferred Offering, until June 15, 2000.

### 3. "Controlling Person" Liability

Plaintiffs assert control person liability claims against Defendant Nichols pursuant to section 15 of the Securities Act and section 20(a) of the Exchange Act. First, Defendant Nichols argues that the section 15 controlling person claim is viable only if Plaintiffs have alleged claims against JDN for violations of sections 11 and 12(2) of the Securities Act. Defendant Nichols' argument rests on the assertion that Plaintiffs have no standing to assert section 11 or 12(2) claims against JDN. (Def. Nichols' Mot. To Dismiss at 48–49.) However, as discussed in section B.2 *supra*, because Plaintiffs purchased their stock "pursuant to or traceable to" the registration statements for the public offerings, they have standing to maintain the section 11 claim (and a section 12(2) claim) against all Defendants. Thus, because Plaintiffs have sufficiently alleged claims against JDN for violation of sections 11 and 12(2), Plaintiffs' section 15 controlling person claim against Defendant Nichols may proceed.

Second, Defendant contends that the section 20(a) controlling person claim is viable only if Plaintiffs have alleged primary securities fraud claims against JDN and Development under section 10(b) of the Exchange Act. Defendant Nichols' argument is as follows: because Plaintiffs allege in the Complaint that JDN's and Development's scienter flows directly from Nichols, and because Plaintiffs have failed to allege scienter on the part of Nichols, Plaintiffs have failed to allege a primary fraud claim against JDN or Development. (Def. Nichols' Mot. To Dismiss at 49–50.)

Similarly, Clarion purchased common stock in the March 1997 Offering, and the first earnings statement covering a twelve-month period following the effective date of the March 1997 registration statement was JDN's 1998 10–K, which was publicly disseminated on March 23, 1999.

■ Plaintiffs allege that Nichols was an officer and CEO of JDN during the Class Period who through his position could control JDN's general affairs and that Nichols possessed the authority to control the content of the disclosures and financial statements disseminated to the public. These allegations are sufficient for Plaintiffs to state a cause of action for controlling person liability against Defendant Nichols as long as Plaintiffs' Complaint alleges the elements of securities fraud adequately in accordance with Rule 9(b) and the PSLRA.

As discussed in section B.1 *supra*, Plaintiffs have alleged sufficient facts showing scienter on the part of Defendant Nichols to satisfy Rule 9(b) and the PSLRA. Because Defendant Nichols was a control person of JDN and Development, a fact he does not dispute, allegations of Nichols' scienter would also be sufficient to allege scienter on the part of JDN and Development. Therefore, Plaintiffs have adequately alleged a claim against Defendants JDN and Development for primary violation of section 10(b), and Plaintiffs' section 20(a) controlling person claim against Defendant Nichols may proceed. Accordingly, Defendant Nichols' motion to dismiss the controlling persons claims is hereby **DENIED**.

## C. The MS Defendants' Motion To Dismiss

Plaintiffs assert claims against Defendants McCullough Sherrill, Taylor, and Brunstad ("the MS Defendants"), who were the former real estate counsel of JDN, for securities fraud in violation of section 10(b) of the Exchange Act, as amended by the PSLRA, and Rule 10b–5 promulgated thereunder. Plaintiffs allege that by preparing settlement statements and closing binders that misrepresented the true cost of the properties deeded to JDN and Development, the MS Defendants acted with severe reckless disregard of the fact that the inflated numbers in the false documentation would be used to create misleading financial statements for both JDN and Development. (Compl.¶¶ 174, 178.) The Complaint also alleges that the MS Defendants were liable as control persons of JDN and Development under section 20(a) of the Exchange Act and section 15 of the Securities Act.

The MS Defendants argue (1) Plaintiffs' Complaint fails to state a claim against them for a primary violation of section 10(b) and Rule 10b–5, (2) Plaintiffs have not sufficiently alleged scienter, and (3) Plaintiffs fail to allege sufficient facts that the MS Defendants exerted control over JDN.

### 1. Primary Liability Under Section 10(b) and Scienter

Plaintiffs argue that the MS Defendants are primarily liable under section 10(b) because they prepared false real estate documentation that was reflected in JDN's and Development's financial statements and public disclosures. The MS Defendants argue that they cannot be held primarily liable under section 10(b) in light of the Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), which abolished aiding and abetting liability under section 10(b), and the Eleventh Circuit's recent decision in *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir.2001), which sets the standard for holding secondary actors primarily liable under section 10(b).

This Court's first task is to distinguish among the MS Defendants. Only two of

the MS Defendants—McCullough Sherrill and Defendant Taylor—are purely secondary actors; that is, they allegedly participated in the fraudulent scheme in their capacity as real estate counsel to JDN and Development. However, Defendant Brunstad was not only real estate counsel to JDN and Development but also the Assistant Secretary of JDN throughout the Class Period. As an officer of JDN, Defendant Brunstad's involvement in the scheme was substantially different—he was privy to JDN's financial reporting and public disclosures and had a duty to submit truthful and accurate documents to the SEC and the public. Thus, the MS Defendants must be separated for purposes of assessing whether Plaintiffs have satisfied the standards for pleading section 10(b) claims against them.

### a. Defendant McCullough Sherrill and Defendant Taylor

In the years after *Central Bank,* the federal courts have split over the threshold requirement for a secondary actor, such as a lawyer or an accountant, to be primarily liable under section 10(b). *See Ziemba,* 256 F.3d at 1205 (comparing cases). In *Ziemba,* the Eleventh Circuit considered the *Central Bank* holding that in order for a secondary actor, such as a law firm or accounting firm, to be primarily liable under section 10(b), the plaintiff "must show reliance on the defendant's misstatement or omission to recover under 10b–5." *See Central Bank,* 511 U.S. at 180, 114 S.Ct. 1439 (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)). The Eleventh Circuit followed the Second Circuit in concluding that, in light of *Central Bank,* in order for the defendant to be primarily liable under section 10(b) and Rule 10b–5, the alleged misstatement or omission upon which a plaintiff relied must have been "publicly attributable" to the defendant at the time that the plaintiff's investment decision was made. *See Ziemba,* 256 F.3d at 1205 (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 175 (2d Cir.1998)).

With respect to Defendant McCullough Sherrill and Defendant Taylor, the secondary actors, the Court applies the standard set forth in *Ziemba.* In the Complaint, Plaintiffs have not alleged any misstatement or omission "publicly attributable" to Defendant McCullough Sherrill and Defendant Taylor upon which Plaintiffs relied at the time Plaintiffs made their investment decisions. Plaintiffs only allege that Defendant McCullough Sherrill and Defendant Taylor prepared false settlement statements and closing binders for JDN's and Development's real estate transactions and that the false documentation would be used to create misleading financial statements with an artificially inflated basis in JDN's assets and an under-reporting of its expenses. There are no allegations that Defendant McCullough Sherrill and Defendant Taylor prepared SEC filings or other public disclosures, and there are no allegations that the public knew of or relied on any documents directly attributable to Defendant McCullough Sherrill and Defendant Taylor when making investment decisions. Further, JDN's accounting staff and securities counsel, not the real estate attorneys, were ultimately responsible for preparing and submitting JDN's financial reports and public disclosures.

Although the Court realizes that Defendant McCullough Sherrill's and Defendant Taylor's participation in preparing false documents for JDN's real estate transactions is culpable, their conduct does not give rise to primary liability for securities fraud under section 10(b). Because Plain-

tiffs' allegations fall short of establishing any actionable material statement or omission "publicly attributable" to Defendant McCullough Sherrill and Defendant Taylor upon which Plaintiffs relied in their investment decisions, Plaintiffs cannot establish reliance, one element in pleading a section 10(b) claim. *See Ziemba*, 256 F.3d at 1202, 1205. Accordingly, the Court **GRANTS** Defendant McCullough Sherrill's and Defendant Taylor's motion to dismiss the section 10(b) claims against them.

### b. Defendant Brunstad

However, with respect to Defendant Brunstad, both an officer of JDN and its real estate counsel, the Court applies the section 10(b) pleading standards for primary actors. As discussed above, Plaintiffs must allege particular facts giving rise to a "strong inference" that Defendant Brunstad had the requisite scienter to be liable for securities fraud. *See supra* section A.1. In the Eleventh Circuit, Plaintiffs must present direct or circumstantial evidence that shows that Defendant Brunstad acted with conscious intent to defraud or with severe recklessness.

After reviewing the Complaint, and accepting all well-pleaded facts as true and drawing all inferences in a light most favorable to Plaintiffs, the Court finds that Plaintiffs have satisfied the pleading threshold of the PSLRA and Rule 9(b) for scienter as to Defendant Brunstad. Here, Plaintiffs have alleged facts that the Court finds constitute strong circumstantial evidence of Defendant Brunstad's conscious misbehavior or severe recklessness. Spe-

cifically, the Complaint alleges in great factual detail that Defendant Brunstad, JDN's Assistant Secretary and real estate counsel, consciously participated in a scheme to conceal excessive executive compensation to Defendants Hughes and Whittelsey and related party transactions. In fact, Defendant Brunstad personally prepared some of the false settlement statements and closing binders that masked land conveyances to and fees paid to ALA, the company wholly owned by Hughes and Whittelsey, and that false documentation was used to produce JDN's false and misleading financial statements.

Furthermore, despite a duty to disclose misleading statements to the public, Defendant Brunstad repeatedly allowed JDN to issue false public disclosures regarding executive compensation and related party transactions and to submit SEC filings that misrepresented not only JDN's financial condition but also that JDN's financial statements were prepared in accordance with GAAP and SEC disclosure rules. Clearly he knew, or was severely reckless in not knowing, that these disclosures were incomplete and that he was making misrepresentations to JDN's shareholders. With these alleged facts, the Court finds that Defendant Brunstad's participation in the scheme indicates that he intended to mislead the public, or at a minimum, was severely reckless, and he should have known that his conduct posed a danger of misleading buyers or sellers.[10] At this stage of the litigation, the Court finds that Plaintiffs have alleged sufficient facts showing scienter on the part of Defendant Brunstad to justify proceeding with discov-

---

**10.** The Court also notes that under the "group pleading" doctrine, Plaintiffs have stated a claim against Defendant Brunstad, who was an executive officer of JDN and therefore assumed to be an author of the misrepresen-

tations and omissions in the group-published SEC filings and public disclosures. *See* section D.1 *infra* (discussing the "group pleading" doctrine in more detail).

ery. Accordingly, the Court **DENIES** Defendant Brunstad's motion to dismiss the section 10(b) claim.

### 2. "Controlling Person" Liability

 The MS Defendants also argue that they are not control persons under *Brown v. Enstar Group, Inc.*, 84 F.3d 393 (11th Cir.1996). Under *Enstar*, a plaintiff who asserts "controlling person" claims must allege that the defendant had the power to control both: (1) the general affairs of the primary violator; and (2) the specific corporate policy that resulted in the primary violation. Again, because Defendant Brunstad was an officer of JDN, the Court must distinguish among the MS Defendants for purposes of assessing whether Plaintiffs have satisfied the standards for pleading "controlling person" liability.

 In the Complaint, Plaintiffs allege that Defendant Brunstad was an executive officer of JDN during the Class Period. (Compl.¶ 31.) Further, JDN has publicly stated that its executive officers had the power to control JDN's general affairs and the authority to control the content of the public disclosures and financial statements disseminated at the time JDN violated securities laws. (Compl.¶ 123, 125.) As an officer of JDN, Defendant Brunstad had the "requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Enstar*, 84 F.3d at 396; *see In re World Access*, 119 F.Supp.2d at 1358. Thus, for purposes of section 15 of the Securities Act and section 20(a) of the Exchange Act, Plaintiffs have adequately alleged controlling person liability as to Defendant Brunstad, and the Court **DENIES** Defendant Brunstad's motion to dismiss Plaintiffs' "controlling person" claims.

However, with respect to Defendant McCullough Sherrill and Defendant Taylor, Plaintiffs have not adequately alleged controlling person liability. Plaintiffs allege that Defendant McCullough Sherrill and Defendant Taylor, as real estate counsel for the JDN land transactions that resulted in the undisclosed executive compensation and related party transactions, exercised control over JDN's improper conduct and inaccurate financial reports because they had the ability and opportunity to prevent false financial information from being disseminated to the public. (Compl.¶¶ 124–25.) However, this allegation is insufficient to show that, as real estate counsel involved in only fifteen transactions, Defendant McCullough Sherrill and Defendant Taylor had the power to control the general affairs of JDN at the time it violated the securities laws and the requisite power directly or indirectly to control or influence the specific corporate policy which resulted in the primary liability. These Defendants acted in the role of real estate counsel and did not influence JDN's corporate policies with respect to bookkeeping, financial reporting, securities filings, and public disclosures. Thus, the Court finds that Defendant McCullough Sherrill and Defendant Taylor were not "control persons" for purposes of section 15 of the Securities Act and section 20(a) of the Exchange Act, and the Court **GRANTS** Defendant McCullough Sherrill's and Defendant Taylor's motion to dismiss the "controlling person" claims against them.

### D. Defendants Hughes' and Whittelsey's Motion To Dismiss

Defendants Hughes and Whittelsey incorporate by reference the arguments made by the MS Defendants and Defendant Nichols in support of their motions to

dismiss. Further, Defendants Hughes and Whittelsey stress the following points: (1) Plaintiffs' Complaint fails to plead scienter with respect to Hughes and Whittelsey, and (2) the Complaint fails to state a claim for "controlling person" liability against them.

## 1. Scienter

■ Defendants Hughes and Whittelsey argue that Plaintiffs' only allegations of scienter against them are contingent on the "group pleading doctrine," which allows a court to presume scienter for officers of a defendant corporation. Defendants assert that the group pleading doctrine was abolished by the PSLRA, and as a result, Plaintiffs' section 10(b) claim against Defendants must be dismissed. On the other hand, Plaintiffs argue that the Complaint alleges that Defendants Hughes and Whittelsey are both directly liable for material omissions, and Plaintiffs contend that allegations of scienter are sufficient under the group pleading doctrine, which survived the PSLRA.

First, the Court finds that the Complaint adequately alleges direct liability for Defendants Hughes and Whittelsey. According to the integrated disclosure provisions of the SEC, JDN and its officers (which by definition included its statutorily determined executive officers, Hughes and Whittelsey) had a duty to disseminate truthful information that would be material to investors. *See* Reg. S–X, 17 C.F.R. § 210.01 *et seq.;* Reg. S–K, 17 C.F.R.

§ 229.10 *et seq.* The Complaint alleges that Defendants Hughes and Whittelsey reviewed and shared responsibility for reports filed with the SEC and that they were duty-bound to make accurate disclosures to JDN's shareholders. (Compl.¶¶ 3, 32(d)-(e), 33(a)-(c), 80, 123, 137.) Therefore, by allowing JDN to misrepresent its executive compensation disclosures; related party transactions, and financial results of operation, Defendants Hughes and Whittelsey violated their duties to JDN shareholders.

■ Furthermore, under the group pleading doctrine,[11] Plaintiffs have also stated a claim against Defendants Hughes and Whittelsey. Although the Eleventh Circuit has not addressed this issue, this Court, with one exception, has held that the group pleading doctrine survived the enactment of the PSLRA. *See Lewis v. Advanced Tech. Prods, Inc.,* No. 1:00–CV–1702–WBH, slip op. at 18–19 (N.D.Ga. Aug. 28, 2001) (Hunt, J.) (holding that the group pleading doctrine is viable after the PSLRA); *In re Theragenics Corp. Sec. Litig.,* 105 F.Supp.2d 1342, 1357–58 (N.D.Ga.2000) (Thrash, J.) (same); *In re World Access, Inc., Sec. Litig.,* 119 F.Supp.2d 1348, 1357 (N.D.Ga.2000) (Evans, J.) (same); *In re Miller Indus. Sec. Litig.,* 12 F.Supp.2d 1323, 1329 (N.D.Ga. 1998) (Thrash, J.) (same); *In re ValuJet, Inc. Sec. Litig.,* 984 F.Supp. 1472, 1478 (N.D.Ga.1997) (Thrash, J.) (same). *But see In re Premiere Tech. Sec. Litig.,* 2000 WL 33231639, at *10 (N.D.Ga. Dec.10,

11. Under the group pleading doctrine, "the identification of the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group-published documents, such as annual reports, prospectuses, registration statements, press releases, or other group-published information that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation." *Lewis v. Advanced Tech. Prods, Inc.,* No. 1:00–CV–1702–WBH, slip op. at 18–19 (N.D.Ga. Aug. 28, 2001) (Hunt, J.) (citing *In re Sunbeam Sec. Litig.,* 89 F.Supp.2d 1326 (S.D.Fla.1999)).

2000) (Forrester, J.) (holding that the PSLRA abolished the group pleading doctrine).

Several federal courts have questioned the continuing existence of the group pleading doctrine, but a majority has held that the doctrine survives enactment of the PSLRA or have, at least, applied the doctrine to post-PSLRA cases. *See Lewis,* slip op. at 19–20 (citing cases); *In re Premiere Tech.,* 2000 WL 33231639, at \*10 (recognizing that a majority of courts holds that the doctrine survives the PSLRA, although ultimately concluding otherwise). Like Judge Hunt in *Lewis,* this Court finds Judge Thrash's rationale supporting application of the doctrine persuasive:

> As policy support for its view that the group pleading doctrine survived the [PSLRA's] enactment, this Court notes that the group pleading doctrine is simply a rebuttable doctrine that the contents of company-published documents and press releases are attributable to officers and directors with inside knowledge of and involvement in the day-to-day affairs of a company. Because this doctrine raises only a rebuttable presumption and applies only to a limited class of people within a company, this Court cannot say that it is inconsistent with the [PSLRA] or that it was abolished by its enactment.

*In re Theragenics,* 105 F.Supp.2d at 1358 (citations omitted). Particularly at the motion to dismiss stage of litigation, before Plaintiffs have opportunity to conduct discovery, the group pleading doctrine is appropriate and fair. *See Lewis,* slip op. at 20–21 (citing *In re Reliance Sec. Litig.,* 91 F.Supp.2d 706, 725 (D.Del.2000)). There-

fore, as is consistent with the language and underlying policy of the PSLRA and with the majority of courts to consider the issue, this Court finds that the group pleading doctrine is still viable after the enactment of the PSLRA.

The Court finds that under the "group pleading" doctrine, Plaintiffs state a claim against Defendants Hughes and Whittelsey [12] as authors of the omissions and affirmative misrepresentations—that JDN complied with GAAP, that JDN's compensation disclosures and related party transactions were accurate and complete, and that JDN's balance sheets and income statements were correct. Plaintiffs allege that all Defendants acted with scienter in that Defendants participated in a scheme to conceal executive compensation, knew that the public disclosures and financial statements issued or disseminated to the investing public in the name of JDN were materially false and misleading, and knowingly participated or acquiesced in the issuance or dissemination of such statements as primary violations of the federal securities laws.

Accordingly, Defendants Hughes and Whittelsey are not entitled to dismissal on the basis of the group pleading doctrine's invalidity, and the Court **DENIES** Defendants Hughes' and Whittelsey's motion to dismiss Plaintiffs' section 10(b) claim.

### 2. "Controlling Person" Liability

 Defendants Hughes and Whittelsey also argue that they are not control persons under *Brown v. Enstar Group, Inc.,* 84 F.3d 393 (11th Cir.1996). Under *Enstar,* Plaintiffs must show that Defendants Hughes and Whittelsey had the pow-

---

**12.** Plaintiffs also state a claim under the "group pleading" doctrine against Defendants Nichols and Brunstad, who were executive officers of JDN.

er to control general corporate affairs and specific company policy. *Id.* at 396. In the Complaint, Plaintiffs allege that Defendants Hughes and Whittelsey were executive officers of Development, and as a result of their high-level roles, they were deemed executive officers of JDN itself pursuant to Rule 3b–7, 17 C.F.R. § 240.3b–7, promulgated by the SEC under the Exchange Act. (Compl.¶ 3.) JDN acknowledged this fact by including Defendants Hughes and Whittelsey in its executive compensation charts. *See* Reg. S–K, Item 402(a)(3) (discussing when officers of a subsidiary must be reported as executive officers in a registrant's compensation disclosures). Further, JDN has publicly stated that its executive officers, including Hughes and Whittelsey, had the power to control JDN. (Compl.¶ 123, 125.)

Defendants Hughes and Whittelsey also had the "requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Enstar,* 84 F.3d at 396. They had the authority to buy land that JDN ultimately used to develop shopping centers and to control the documentation and reporting of those deals. Together with Defendant Nichols, they used this power to structure land transactions in a way that allowed them to receive unreported compensation from JDN and/or Development. Further, Defendants Hughes and Whittelsey, as executive officers, had a duty to disclose or correct and material omissions or misstatements in JDN's public disclosures and SEC filings. Thus, for purposes of section 15 of the Securities Act and section 20(a) of the Exchange Act, Defendants Hughes and Whittelsey are control persons of JDN and Development.

Accordingly, the Court **DENIES** Defendants Hughes and Whittelsey's motion to dismiss Plaintiffs' "controlling person" claims. Additionally, the Court **DENIES** Defendants Hughes and Whittelsey's motion to dismiss on all the arguments made in Defendant Nichols' and the MS Defendants' motions to dismiss, which Defendants Hughes and Whittelsey incorporated by reference.

## CONCLUSION

For the foregoing reasons, the Motion of Defendants Hughes and Whittelsey To Dismiss Consolidated Amended Complaint [84–1], the Motion of Defendant J. Donald Nichols To Dismiss Consolidated Class Action Complaint [85–1], and Plaintiffs' Request for Oral Argument [110–1] are hereby **DENIED.**

Defendants McCullough Sherrill, LLP, Bradley J. Taylor, and William D. Brunstad's Motion To Dismiss Plaintiffs' Complaint [83–1] is hereby **GRANTED in part and DENIED in part.** The Court hereby DISMISSES all claims against Defendants McCullough Sherrill, LLP, and Bradley J. Taylor; however, all claims against Defendant William D. Brunstad are allowed to proceed.

Finally, the Motion of Defendant J. Donald Nichols for Leave To Exceed Page Limitation for Reply Brief [109–1] is hereby **GRANTED.**